Michael GILMORE and Sheila Gilmore, as guardians and next friends of minor child, Brian Gilmore, Plaintiffs–Appellants,

v.

CONCERNED PARENTS OF PUEBLO, a Colorado non-profit corporation, Defendant–Appellee.

No. 99CA1164.

Colorado Court of Appeals, Div. V.

Oct. 26, 2000.

Certiorari Granted Aug. 6, 2001.

Mullans, Piersel & Reed, P.C., Shannon Reed, Pueblo, CO, for Plaintiffs–Appellants.

Dewhirst & Weeks, LLP, Miles M. Dewhirst, Jeffrey L. Weeks, Colorado Springs, CO, for Defendant–Appellee.

Opinion by Judge NIETO.

In this action seeking recovery for personal injuries sustained by their minor child, plaintiffs, Michael and Sheila Gilmore, as guardians of Brian Gilmore (the child), appeal the summary judgment entered in favor of defendant, Concerned Parents of Pueblo. We reverse and remand for further proceedings.

In 1996, the child was the subject of a juvenile delinquency petition. Pursuant to a dispositional agreement, prosecutors agreed that the delinquency petition would be dismissed if the child successfully completed a Detentional Alternative Program. A district court magistrate ordered the child to participate in the program for 90 days and also ordered him to complete an additional 50 hours of public service through the Juvenile Offenders Redirection Program (JORP).

The JORP was a program run by defendant, a non-profit organization.

Shortly thereafter, the child and several other youths were assigned to a JORP work crew to clean an arroyo near Pueblo, Colorado. Because the child presented a behavioral problem, a JORP supervisor ordered him to remain in or near a van used to transport the youths to the site. The van contained canisters of gasoline for the power equipment used for the job. According to the complaint, the child suffered severe burns after his pant leg became soaked in gasoline and ignited.

Plaintiffs commenced this action asserting that defendant was negligent in its operation of the program and in its supervision of the child and that this negligence proximately caused the child's injuries.

Defendant filed a motion to dismiss arguing that it was entitled to immunity both because it was a volunteer organization under § 13–21–116(2.5), C.R.S.2000, and because it was a facility providing non-residential services to adjudicated juveniles under § 19–2—404, C.R.S.2000.

Because defendant's motion incorporated materials outside the pleadings, the trial court treated it as a motion for summary judgment. The trial court then dismissed the action after concluding that defendant's actions fell within the coverage of § 13–21–116(2.5). The trial court did not specifically address whether defendant was also entitled to immunity under § 19–2–404.

## I.

■ Plaintiffs contend that the trial court erred in dismissing the action based on the immunity provisions set forth in § 13–21–116(2.5). We agree.

Initially, we note that summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Cung La v. State Farm Automobile Insurance Co.*, 830 P.2d 1007 (Colo.1992). The moving party has the burden of establishing the nonexistence of a genuine issue of material fact. If the moving party meets that burden, the burden then shifts to the nonmoving party to demonstrate that there is a triable issue of fact. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987).

It is undisputed that defendant is a non-profit corporation. Section 13–21–116(2.5)(a), C.R.S.2000, provides a non-profit corporation immunity from liability under certain circumstances. It states:

> No person who performs a service or an act of assistance, *without compensation or expectation of compensation,* as a leader, assistant, teacher, coach, or trainer for any program, organization, association, service group, educational, social, or recreational group, or nonprofit corporation serving young persons or providing sporting programs or activities for young persons shall be held liable for actions taken or omissions made in the performance of his duties except for wanton and willful acts or omissions .... (emphasis added)

For purposes of that section, § 13–21–116(4), C.R.S.2000, defines "person" to mean "an individual, corporation, partnership, or association."

In its summary judgment motion, defendant included an affidavit from the president of its board of directors, who indicated that defendant is a non-profit corporation organized exclusively for charitable and educational purposes, including to foster and encourage a cooperative community effort to address the problems facing young people of Pueblo, Colorado. He also stated that defendant operated the JORP program, "which was designed to provide juvenile offenders with goal-directed, meaningful, productive activities ... while also providing restitution and useful public service as deterrents to juvenile crime."

The president's affidavit indicated that defendant's ten board members, three office staff workers, and approximately fifteen regular volunteers were not compensated for their time and labor. However, he did acknowledge that defendant had one paid employee (the supervisor in charge of the JORP program) and also paid a bookkeeper.

He further indicated that although defendant did receive "state grant money" for the operation of JORP, this money was used

merely as reimbursement for expenses incurred in purchasing JORP supplies and paying the salary of the JORP supervisor and bookkeeper. His affidavit also stated that defendant did not generate a profit from the JORP activities.

In their response, plaintiffs attached an affidavit from the coordinator of the local Juvenile Services Board (Board). She indicated that, during 1996 and 1997, she was coordinator for the Board and that she solicited bids from various private agencies and community service organizations to provide services in implementing alternative juvenile dispositional options. She stated that the Board ultimately accepted a bid submitted by defendant and that defendant was offered and accepted a contract under which it was to receive payment of $59,990. She further indicated that defendant was ultimately paid a total of $49,979.68 before the contract was terminated.

The coordinator also stated that defendant "did perform its obligations under the contract terms and was paid for its services as agreed" and that to the best of her knowledge, the money paid to defendant was not a grant but rather was compensation for services rendered.

■ In our view, the issue of defendant's entitlement to immunity under § 13–21–116(2.5) depends upon the meaning of the word "compensation" used in that section. In construing statutory provisions, a reviewing court must attempt to give effect to the intent of the General Assembly and must afford the statutory terms their plain and ordinary meaning. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380 (Colo.1997); *Cordova v. Pueblo West Metropolitan District*, 986 P.2d 976 (Colo.App.1998).

The term "compensation" is defined as "something given or received as an equivalent for services," *see Random House Webster's College Dictionary* 276 (1991), or as "[r]emuneration and other benefits received in return for services rendered." *See Black's Law Dictionary* 277 (7th ed.1999); *Denver Local 2-477, Oil, Chemical & Atomic Workers' International Union v. Metro Wastewater Reclamation District*, 7 P.3d 1042 (Colo. App.1999).

The materials submitted by the parties reveal that, although nearly all of the individuals working for defendant were, in fact, volunteers receiving no compensation for their time and labor, the defendant non-profit corporation contracted to receive $59,000 and did receive $49,979.68 in direct exchange for the services it provided. Under these circumstances, we fail to see how defendant was performing the services in question here without compensation or expectation of compensation as required under § 13–21–116(2.5). To the contrary, defendant was a compensated entity providing contracted services for a fee, albeit primarily through the efforts of individual volunteers. Furthermore, the fact that defendant did not realize a profit from providing the services is not critical because the statute speaks of compensation or expectation of compensation, not of profit.

Defendant points to certain organizations that it believes were clearly intended to receive immunity under § 13–21–116(2.5) such as scouting organizations and youth sports groups. Defendant notes that these organizations all receive operating money through membership dues or various fundraising activities and argues that defendant's receipt of funds is no different. In our view, however, the fundraising conducted by these organizations stands in sharp contrast to defendant's receipt of a specified fee in exchange for performing a particular service pursuant to a contract. In the contrasted organizations, the dues paid and money collected are for the general support of the organization receiving funds. The only quid pro quo is that the funds will be used to carry out the purposes of the organization. Here, there is a contractual exchange of money in return for specific services to be rendered, and the services rendered are for the benefit of the entity paying the funds.

The trial court found the case of *Jones v. Westernaires, Inc.*, 876 P.2d 50 (Colo.App. 1993) to be dispositive of the volunteer immunity issue. However, the division in *Westernaires* addressed the relationship between § 13–21–116(2.5) and the subsequently enacted Volunteer Service Act. *See* § 13–21–115.5, C.R.S.2000. It did not address the issue

presented here—whether a non-profit corporation that is staffed primarily with volunteers but contracts for and receives funds in return for providing a specific service is immune under § 13–21–116(2.5) from claims of negligence arising from that service.

Based upon the materials submitted, we conclude that the trial court erred in determining that defendant provided the services at issue without compensation or expectation of compensation. We further conclude that the money defendant received pursuant to the contract amounted to compensation under § 13–21–116(2.5). Consequently, the trial court erred in determining that defendant was entitled to immunity under that statute.

## II.

■ Plaintiffs also contend that defendant was not entitled to immunity under § 19–2–404. We agree.

Initially, we note that defendant sought dismissal under § 19–2–404 and the trial court cited that statute in its order, but the court did not base its dismissal on that ground. Nevertheless, because defendant on appeal relies on that statute as another basis for affirming the judgment, we address the issue. See Farmers Group, Inc., v. Williams, 805 P.2d 419 (Colo.1991) (prevailing party may assert grounds in support of the judgment not relied upon by the trial court).

Section § 19–2–404 provides, in pertinent part, as follows:

(1) Any facility that houses or provides nonresidential services to adjudicated juveniles pursuant to this article whether publicly or privately operated for short-term or long-term commitment or detention is authorized to respond in a reasonable manner to issues of control and restraint of adjudicated juveniles when necessary. . . .
(2) Any facility that houses or provides nonresidential services to adjudicated juveniles pursuant to this article and any person employed by said facility or program shall not be liable for damages arising from acts committed in the good faith implementation of this section; except that the facility or program and any person employed by the facility or program may

be liable for acts that are committed in a willful and wanton manner.

When these subsections are read together, it is clear that the immunity provided in § 19–2–404(2), C.R.S.2000, applies only to actions committed in the good faith implementation of § 19–2–404. As pertinent here, this means immunity may attach only to actions involving a response to issues of control and restraint of "adjudicated juveniles" as set forth in § 19–2–404(1), C.R.S.2000. Consequently, if the actions of defendant did not involve responding to an issue of control and restraint of an "adjudicated juvenile," the immunity provided in § 19–2–404(2) does not apply.

Here, we are not persuaded that defendant, as the movant seeking summary judgment, satisfied its initial burden of establishing that the child was an "adjudicated juvenile" as required under § 19–2–404.

The affidavit of the defendant's president did contain an assertion that the child was an adjudicated juvenile delinquent. However, we view this bare assertion as insufficient, particularly in light of other undisputed facts revealed by the record. See Walter v. City and County of Denver, 983 P.2d 88 (Colo. App.1998) (mere conclusory statements concerning ultimate issues without including facts that tend to prove or disprove the allegations are insufficient to establish genuine issue).

For a juvenile to be considered "adjudicated" under the Children's Code, there must be an "adjudication." The term "adjudication" is specifically defined as "a determination by the court that it has been proven beyond a reasonable doubt to the trier of fact that the juvenile has committed a delinquent act or that a juvenile had pled guilty to committing a delinquent act." Section § 19–1–103(2), C.R.S.2000.

Here, defendant did not allege, or present any evidence indicating, that the magistrate in the delinquency case had determined the child had committed a delinquent act or had pled guilty to committing such an act. Furthermore, defendant does not dispute that, under the terms of the plea agreement, the delinquency petition was to be dismissed

upon the child's completion of the Detentional Alternative Program. Nor does defendant dispute the assertion in plaintiffs' brief on appeal that the delinquency petition was in fact dismissed in April 1997.

In support of its position that the child was adjudicated, defendant points to the magistrate's order requiring the child to participate in the "Detention Alternative Program" and the JORP. Defendant essentially argues that this order constituted an adjudication. However, because the magistrate's order does not satisfy the specific definition of adjudication contained in § 19–1–103(2), we are not persuaded.

Under these circumstances, we conclude that genuine issues of material fact remain concerning the applicability of § 19–2–404, and that summary judgment was therefore improper.

The judgment is reversed and the cause is remanded for further proceedings on plaintiffs' complaint.

RULAND and ROY, JJ., concur.