CONCERNED PARENTS OF PUEBLO, INC., a Colorado non-profit corporation, Petitioner,

v.

Michael GILMORE and Sheila Gilmore, as guardians and next friends of minor child, Brian Gilmore, Respondents.

No. 00SC950.

Supreme Court of Colorado, En Banc.

April 22, 2002.

As Modified on Denial of Rehearing June 6, 2002.

Dewhirst & Weeks, LLP, Jeffrey L. Weeks, Miles D. Dewhirst, Colorado Springs, CO, Attorneys for Petitioner.

Mullans, Piersel & Reed, P.C., Shannon Reed, Pueblo, CO, Attorneys for Respondents.

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

This case requires us to interpret section 13–21–116(2.5)(a), 5 C.R.S. (2001), to determine whether it provides a non-profit corporation with immunity from liability. We hold that it does not. Instead, we hold that the statute protects only those "persons" who

perform volunteer services for the non-profit organization.

The trial court granted summary judgment to the non-profit organization, based on its conclusion that section 13–21–116(2.5)(a) shielded such organizations from liability for negligence. The court of appeals reversed, reasoning that the trial court erred by concluding that the non-profit organization in this case had performed volunteer services "without compensation or expectation of compensation," a requirement demanded by the statute, because the non-profit received money from the state pursuant to a contract. *Gilmore v. Concerned Parents of Pueblo, Inc.*, 28 P.3d 963, 965 (Colo.App.2000).

Though we employ different reasoning than that used by the court of appeals, we affirm its result. We hold that section 13–21–116(2.5)(a) protects people who work as volunteers for designated types of organizations from liability. It does not, however, insulate those organization themselves from liability.

## II. FACTS AND PROCEEDINGS BELOW

The petitioner, Concerned Parents of Pueblo, Inc., is a non-profit corporation that attempts to assist troubled youths in Pueblo, Colorado. It relies almost entirely on the services of volunteers, paying only one employee and a bookkeeper. The continued existence and operation of Concerned Parents is made possible through the receipt of state grant money.

Brian Gilmore, a minor, was ordered by the magistrate of the Pueblo County Court to participate in the Juvenile Offender Redirection Program ("JORP") offered by Concerned Parents. Gilmore was assigned to a JORP work crew to clean a creek near Pueblo. Because Gilmore was misbehaving, a JORP supervisor ordered him to remain near the van that had transported the crew to the creek.

The van contained gasoline containers that were, according to the complaint, unsecured. Gilmore's pants got soaked with gasoline which somehow ignited, resulting in injury to Gilmore.

Gilmore's parents brought suit on his behalf, asserting a claim of negligence against Concerned Parents. No claims were brought against any of the individual volunteers who staffed the work crew at the time of Gilmore's injury.

Concerned Parents filed a motion to dismiss, arguing that it was entitled to immunity from negligence suits under both section 13–21–116(2.5), 5 C.R.S. (2001), and section 19–2–404(2), 6 C.R.S. (2001).[1]

The trial court granted Concerned Parents' motion, reasoning that it was entitled to immunity under section 13–21–116(2.5). The trial court did not address the argument presented regarding section 19–2–404(2).

The court of appeals reversed and remanded the case for further proceedings, reasoning that the trial court had erred by concluding that Concerned Parents performed volunteer services without compensation or expectation of compensation because the money Concerned Parents received from the state amounted to compensation under section 13–21–116(2.5). *Gilmore*, 28 P.3d at 965.

We granted certiorari on the issue of whether Concerned Parents is immune from liability under section 13–21–116(2.5).[2] We affirm the holding of the court of appeals, though our reasoning differs significantly from that employed by the court of appeals. We express no opinion on other issues presented by this case, including the applicability of section 19–2–404(2).

---

1. The motion was treated as a motion for summary judgment because materials outside the pleadings were submitted to the court. C.R.C.P. 12(b), 12 C.R.S. (2001).

2. The precise issue on which we granted certiorari is:

> Whether a non-profit corporation that is staffed primarily with volunteers but receives funds to reimburse it for actual expenses incurred in connection with providing a specific service is immune under C.R.S. § 13–21–116(2.5) from claims of negligence arising from that service.

## III.  ANALYSIS

■  Section 13–21–116 is entitled "Actions not constituting an assumption of duty—board member immunity—immunity for volunteers assisting organizations for young persons."  The subsection of the statute that we interpret in this case, subsection (2.5), was added to the statute in 1987 out of a concern, discussed in more detail below, that people were discouraged from volunteering because they could be subjected to liability for any negligent acts committed while volunteering.  Section 13–21–116(2.5)(a) provides:

No person who performs a service or an act of assistance, without compensation or expectation of compensation, as a leader, assistant, teacher, coach, or trainer for any program, organization, association, service group, educational, social, or recreational group, or nonprofit corporation serving young persons or providing sports programs or activities for young persons shall be held liable for actions taken or omissions made in the performance of his duties except for wanton and willful acts or omissions;  except that such immunity from liability shall not extend to protect such person from liability for acts or omissions which harm third persons.

As originally enacted in 1986, section 13–21–116 served only to insulate those "persons" who volunteered on the boards of nonprofit organizations and corporations from liability for negligence.  "Person" was broadly defined to mean "an individual, corporation, partnership, or association."  § 13–21–116(4).  This definition of "person" was not amended when, in 1987, the legislature subsequently inserted subsection (2.5) into the statute.

The addition of subsection (2.5) served to expand the grant of immunity under the statute.  With this case, we must determine which parties that this subsection protects.

Based on the definition of "person" and the interpretation given to subsection (2.5) by the court of appeals in *Jones v. Westernaires, Inc.,* 876 P.2d 50, 53 (Colo.App.1993), Concerned Parents argues that it is a "person" who performs a service, without compensation or expectation of compensation, as a leader, assistant, teacher, coach, and/or train-

er for a program that serves young persons under 13–21–116(2.5).  Therefore, Concerned Parents suggests that it is entitled to immunity.  In contrast, the Gilmores argue that Concerned Parents is not entitled to immunity because it receives compensation for its services through a contract with the state.

Ultimately, we conclude that Concerned Parents is not entitled to immunity under section 13–21–116(2.5)(a), though for a different reason than that suggested by the Gilmores and the court of appeals.  We interpret section 13–21–116(2.5)(a) to not extend immunity to the designated types of organizations serving young people listed in the statute.  Instead, we hold that the statute protects only those volunteers who perform services for those organizations.

■  Our task in interpreting a statute is to give effect to the intent of the General Assembly.  *See, e.g., Colo. Office of Consumer Counsel v. PUC,* 42 P.3d 23, 27 (Colo. 2002).  To discern this intent, we first turn to the language of the statute.  *See, e.g., People v. McCullough,* 6 P.3d 774, 778 (Colo.2000).  If the language of the statute is clear and unambiguous, there is no need to resort to interpretive rules of statutory construction.  *See, e.g., J.P. Meyer Trucking & Constr., Inc. v. Colo. Sch. Dists. Self Ins. Pool,* 18 P.3d 198, 201 n. 5 (Colo.2001).  We must give words not defined in the statute their plain and ordinary meanings.  *See, e.g., Weld County Sch. Dist. RE–12 v. Bymer,* 955 P.2d 550, 554 (Colo.1998).  However, if the language of the statute is ambiguous, we may resort to other sources, including the title of the statute and its legislative history, to determine the General Assembly's intent.  *See, e.g., People v. Zapotocky,* 869 P.2d 1234, 1238 & 1239 (Colo.1994).

■  We must avoid adopting a forced or strained construction, as well as any construction that leads to an absurd result.  *See, e.g., AviComm, Inc. v. Colo. PUC,* 955 P.2d 1023, 1031 (Colo.1998); *Harding v. Indus. Comm'n,* 183 Colo. 52, 59, 515 P.2d 95, 98 (1973).  Additionally, the court is not to substitute its own public policy determinations for those of the General Assembly.  *See, e.g.,*

**314**

*Nicholas v. People,* 973 P.2d 1213, 1216 (Colo.1999).

Section 13–21–116(2.5)(a) provides that "[n]o person who performs a service ... for any [of a list of designated types of organizations] serving young persons ... shall be held liable for actions taken or omissions made in the performance of his duties." We consider here whether the use of the word "person" at the beginning of the sentence means that a non-profit organization is immune from liability when one of the volunteers who works for it commits a negligent act. We conclude that it does not.

If the "person" performing the service, to whom the statute refers, is the organization serving young people itself, then the statute presents a circular conundrum. Acceptance of this interpretation would mean that a non-profit organization that performs a service for itself is immune from liability. Such an interpretation would be nonsensical. Thus, we must look to other sources to determine whether the legislature, by defining "persons" to include corporations, associations, and partnerships, intended to shield all organizations that serve young people from liability.

Before beginning our examination of the evidence of the legislature's intent, we note that there is an additional inconsistency in the statute related to the legislature's use of the word "person." The statute provides immunity for volunteers who work for organizations serving "young persons." "Young persons" is defined to mean *"persons* who are eighteen years of age or younger." § 13–21–116(2.5)(b) (emphasis added). In the particular portion of section 13–21–116(2.5)(a) referring to "young persons" and in the definition of "young persons," the legislature must have intended the word "persons" to refer only to natural persons, despite the definition of "person" found in section 13–21–116(4). This inconsistent use of the word "persons" in the statute further buttresses our conclusion that the statute is ambiguous and that we must turn to other sources to determine legislative intent.

The title of the statute, in relevant portion, reads, "Immunity for volunteers *assisting organizations for young persons.*" § 13–21–116 (emphasis added).[3] This language in no way suggests that the organizations themselves are immune from liability. Instead, it supports the conclusion that the legislature intended to provide immunity only for those volunteers who work on behalf of designated types of organizations, and not those organizations themselves.

This conclusion is consistent with the declaration of legislative intent provided within the statute. Section 13–21–116(1) provides that:

> It is the intent of the general assembly to encourage the provision of services or assistance by persons on a voluntary basis to enhance the public safety rather than to allow judicial decisions to establish precedents which discourage such services or assistance to the detriment of public safety.

This language reiterates the legislature's belief that it is sound public policy to refrain from discouraging people from volunteering by subjecting them to potential tort liability. Though analogous policy considerations might mitigate in favor of providing immunity to the organizations as well, the statute makes no mention of those considerations.

Finally, we turn to the legislative history of section 13–21–116(2.5). Senator Bishop, in presenting the bill to the senate, stated, "The bill provides an immunity from liability in tort for *persons who are volunteers for any organizations serving young people* for acts and omissions made in performing their volunteer duties." Senate Bill 80, Senate Committee of the Whole, February 20, 1997 (emphasis added). He explained:

> [T]his bill basically says that ... those people who are going to coach Young American, Little League, Girl Scouts, Boy Scouts, 4 H Groups would be immune.... I think that in order for us to continue to encourage people to volunteer and work with our young people ... that we need to

**3.** This portion of the title was added in 1987 when the statute was amended to include subsection (2.5).

provide all the encouragement and incentive that we can for them to continue their volunteering work with young people, and that's the purpose of this bill.

*Id.* Further, another senator commented that "[t]his is an excellent bill because there are many, many people who serve out there in Little League, community soccer and theater and play." *Id.*

When Representative Schauer presented the bill to a house committee, he stated that the bill "provides an immunity for tort liability ... for *persons who are volunteers for any organization serving young persons.*" Senate Bill 80, House Committee on Health, Environment, Welfare, and Institutions, March 30, 1987 (emphasis added). When he presented the bill to the entire house, he again reiterated that this statute was intended to protect persons who volunteer for the designated types of organizations. Indeed, he used the word "person" interchangeably with the word "volunteer":

> This bill provides an immunity from liability in tort for *persons who are volunteers* for any organizations serving young persons.... There are two exceptions to this immunity. First, *the volunteer* is not protected from liability if his or her act or omission is wanton and willful. Second, *the volunteer* is not protected from liability for acts or omissions which harm third persons.... Under this bill, *the volunteer* would be immune from liability for his negligent actions which harm the children but would not be immune from liability for his negligent acts which harm the third person.

Senate Bill 80, House Committee of the Whole, April 13, 1987. Representative Pankey also spoke in support of the bill because he thought that it would encourage volunteers to act as tour guides for children who visit the capitol building. *Id.*

Thus, the legislative history reiterates numerous times that the statute is designed to protect those people who volunteer for designated types of organizations that serve young people. The legislative history is barren of any consideration of the liability of the organizations themselves. On this record, we cannot conclude that, merely because the legislature defined "person" to include corporations, partnerships, and associations, it intended to shield all organizations that serve young people from liability.

With section 13–21–116(2.5), the legislature desired to encourage people to volunteer their services to certain types of organizations without fear of liability. By defining the term "person" to include various sorts of entities, the legislature did not intend to protect the underlying organization serving young persons from liability. Indeed, as discussed above, any such interpretation is belied by the title of the statute, the text of the relevant portion of the statute, and the statute's legislative history.

We note that, as a policy matter, the legislature might want to encourage people to volunteer without wishing to strip entirely a tort claimant of remedy against the organization itself. Arguably, it might be sound policy to encourage organizations that serve young people to supervise carefully unpaid volunteers who are immune from liability under section 13–21–116(2.5). Potential tort liability for the organization is one mechanism that might encourage such supervision.

Based on the considerations described above, we hold that section 13–21–116(2.5)(a) does not immunize a non-profit organization that serves young people from tort liability. Instead, we hold that the statute protects only those "persons," who perform volunteer services for the non-profit organization.

We recognize that our analysis departs from that employed by the court of appeals in *Jones v. Westernaires, Inc.,* 876 P.2d 50, 53 (Colo.App.1993). In *Jones,* the court of appeals interpreted section 13–21–116(2.5)(a) broadly. It rejected an argument that the inclusion of various types of entities within the definition of "person" could have referred only to entities separate from the underlying service organization for which the "person" volunteers, stating that it was "not persuaded ... that the General Assembly intended to limit immunity in such a manner." *Id.* For the reasons discussed above, we disagree with the court of appeals' interpretation of the statute. Therefore, we now overrule *Jones.*

If the General Assembly wished to insulate organizations that serve young people from liability, it could have easily done so. With section 13–21–116(2.5)(a), however, the legislature has taken no position on this question. In the absence of either legislative consideration of this issue or unambiguous language in the statute supporting the defendant's interpretation, we decline to judicially decree that the defendant is immune from suit for the reasons stated in this opinion.[4] Such policy determinations lie solely within the domain of the legislature and not this court.

## IV. CONCLUSION

For the reasons explained above, the judgment of the court of appeals is affirmed and this case is remanded to the court of appeals to return it to the district court for further proceedings consistent with this opinion.

---

4. In deciding this case, we have accepted the fact that JORP was a program offered by Concerned Parents, as Concerned Parents stated in its opening brief to us. Thus, we do not reach the question of whether Concerned Parents would be entitled to immunity if it was able to demonstrate, as a factual matter, that JORP was a program offered by Pueblo County for which it provided services.