**In Re: Plaintiff: CLPF–PARKRIDGE ONE, L.P., a Delaware limited partnership, f/k/a Clarion Lion Properties Fund—Parkridge One, LLC, a Delaware limited liability company,**

v.

**Defendants: HARWELL INVESTMENTS, INC., f/k/a Denver Architectural Precast, a Colorado corporation; and FDG, Inc., a Colorado corporation.**

No. 04SA182.

Supreme Court of Colorado,
En Banc.

Jan. 31, 2005.

Pryor, Johnson, Montoya, Carney & Karr, P.C., Michael S. Drew, Kevin P. Ahearn, Greenwood Village, for Defendant Harwell Investments, Inc., f/k/a Denver Architectural Precast.

Kutak Rock LLP, Ira J. Bornstein, Mark C. Willis, Denver, for Defendant FDG, Inc.

HOBBS, Justice.

In this original proceeding under C.A.R. 21, we hold that section 13–80–104(1)(b)(II), C.R.S. (2004) does not bar cross-claims and third-party claims for indemnity or contribution in construction defect lawsuits; rather, this section also allows indemnity or contribution claims to be brought by a separate lawsuit but no later than ninety days after termination of the construction defect lawsuit.[1] Based on statutory and legislative history analysis, we conclude that section 13–80–104(1)(b)(II) is a statute of limitations tolling provision; not, as the trial court ruled, a ripeness provision that prevents a defendant in a construction defect lawsuit from utilizing C.R.C.P. 13 and 14 to bring an indemnity or contribution claim against or add a party allegedly responsible for the construction defect.

Accordingly, we make our rule to show cause absolute and order the trial court to reinstate the cross-claim it dismissed.

## I.

Plaintiff CLPF–Parkridge One, L.P. ("CLPF") is the owner of a commercial office building in Douglas County. CLPF alleges that precast concrete panels covering the exterior of the building cracked and caused damage to the building following purchase of the building from the developer. CLPF sued four defendants: Swinerton Builders ("Swinerton"), the general contractor for the construction of the building; Harwell Investments, Inc. ("Harwell"), the subcontractor who manufactured the precast panels; FDG, Inc. ("FDG"), the engineering firm hired by Harwell to design the precast panels; and Aaon, Inc., a contractor involved with the building's ventilation system.

The Douglas County District Court ("trial court") dismissed CLPF's lawsuits against Swinerton and FDG. It also dismissed CLPF's negligence claim against Harwell but did not dismiss the breach of implied warranty claim against Harwell.

---

1. Harwell Investments, Inc., petitioner in our court, phrases the question before us as follows: Whether C.R.S. § 13–80–104(1)(b)(II) prevents cross claim practice under C.R.C.P. 13(g) or third-party practice under C.R.C.P. 14 until after the underlying lawsuit between the plaintiff and defendant is decided.

Prior to the trial court's dismissal of FDG from the lawsuit, Harwell had asserted a cross-claim against FDG. In the cross-claim, Harwell denied all of CLPF's allegations, but alleged that, to the extent that CLPF's claims are true, FDG is the party responsible for CLPF's alleged damages.

FDG filed a Motion for Judgment on the Pleadings against Harwell's cross-claim. FDG argued that section 13–80–104(1)(b)(II), C.R.S. (2004) precludes Harwell's claim against it until after Harwell either settles the underlying lawsuit with CLPF or a final judgment is entered against Harwell.

Harwell responded that section 13–80–104(1)(b)(II) is a provision that extends the otherwise applicable statute of limitations, in order to allow indemnity or contribution claims to be brought either in the construction defect lawsuit, or in a separate lawsuit, but no later than ninety days after the construction defect lawsuit is settled or results in judgment.

Viewing this statutory provision as a bar to any indemnity or contribution claim until after conclusion of the construction defect litigation, the trial court granted FDG's Motion for Judgment on the Pleadings and dismissed Harwell's cross-claim without prejudice to his ability to file a separate suit after termination of the construction defect lawsuit. Following the trial court's denial of Harwell's Motion for Reconsideration, Harwell petitioned us to order reinstatement of its cross-claim against FDG.

▮▮▮ Under C.A.R. 21, we may exercise original jurisdiction to review an alleged trial court abuse of discretion when a procedural ruling will have a significant effect on a party's ability to litigate the merits of the controversy and the normal course of appeal is inadequate to address the ruling's damage to the party's interest. *Benton v. Adams,* 56 P.3d 81, 85 (Colo.2002)(holding that an "original proceeding is not a substitute for an appeal, but we may act to exercise our dis-

cretionary jurisdiction under C.A.R. 21 when an adverse procedural ruling significantly impairs a party's ability to litigate the controversy").[2] We may also choose to exercise our discretionary jurisdiction under the rule to consider an issue of significant public importance we have not yet decided. *Burchett v. South Denver Windustrial Co.,* 42 P.3d 19, 20 (Colo.2002).

The proper construction of section 13–80–104(1)(b)(II) is a matter of first impression of widespread importance to citizens of Colorado and the construction industry.

## II.

We hold that section 13–80–104(1)(b)(II), C.R.S. (2004) does not bar cross-claims and third-party claims for indemnity or contribution in construction defect lawsuits; rather, this section also allows indemnity or contribution claims to be brought by a separate lawsuit but no later than ninety days after termination of the construction defect lawsuit.

### A. Standard of Review

▮▮▮ The proper construction of section 13–80–104(1)(b)(II) is a question of law we review de novo. In construing a statute, our duty is to effectuate the intent and purpose of the General Assembly. *Weld County Sch. Dist. RE–12 v. Bymer,* 955 P.2d 550, 554 (Colo.1998). We read the statute as a whole, giving sensible effect to all of its parts whenever possible. *Mortgage Invs. Corp. v. Battle Mountain Corp.,* 70 P.3d 1176, 1183 (Colo. 2003).

▮▮▮ If the statutory provisions are clear, we apply their plain and ordinary meaning. *Vigil v. Franklin,* 103 P.3d 322, 327 (Colo.2004). If statutory provisions are in conflict, we adopt the interpretation that best harmonizes the various provisions if possible. *Lobato v. Indust. Claim Appeals Office,* No. 03SC556, slip op. at 10, 2005 WL 89391, 105 P.3d at 220 (Colo. Jan. 18, 2005).

---

**2.** *See also People v. Miller,* 25 P.3d 1230, 1231 (Colo.2001)(authorizing this Court to exercise original jurisdiction to review a trial court's abuse of discretion when no adequate appellate remedy exists); *Mitchell v. Wilmore,* 981 P.2d 172, 175 (Colo.1999)(stating "original jurisdic-

tion may be exercised when a pre-trial ruling will place a party at a 'significant disadvantage in litigating the merits of the controversy,' and conventional appellate remedies would prove inadequate.").

■ If the statutory provisions are unclear, ambiguous, or susceptible to different interpretations, we look to sources of legislative intent, including the object the legislature sought to obtain by the enactment, the circumstances under which it was adopted, and the consequences of a particular construction. § 2–4–203(1), C.R.S. (2004); *See Anderson v. Longmont Toyota*, 102 P.3d 323, 327 (Colo.2004). We may consider the statute's declaration of purpose, its title, and its legislative history in construing legislative intent. *Mortgage Invs. Corp.*, 70 P.3d at 1183; *Mountain City Meat Co. v. Oqueda*, 919 P.2d 246, 252 (Colo.1996).

■ We do not adopt a construction that produces an illogical or absurd result. *Frazier v. People*, 90 P.3d 807, 811 (Colo.2004); *Concerned Parents of Pueblo, Inc. v. Gilmore*, 47 P.3d 311, 313 (Colo.2002).

### B. Section 13–80–104(1)(b)(II) is a Tolling Provision, Not a Ripeness Provision

■ Although the General Assembly placed section 13–80–104(1)(b)(II) in a statute of limitations section applicable to "actions against architects, contractors, builders or builder vendors, engineers, inspectors, and others," the trial court interpreted it to be a ripeness bar against cross-claims and third-party indemnity or contribution claims until after the construction defect lawsuit has terminated in settlement or judgment against the person seeking indemnity or contribution.

The effect of the trial court's ruling is to nullify the operation of C.R.C.P. 13 [3] and 14 [4] in construction defect law suits. These rules provide a mechanism for disposing of multiple claims arising from a single set of facts in one action, where a third party may be liable to the defendant for all or part of the plaintiff's original claim. *Naiman v. Warren A. Flickinger Ass'n*, 43 Colo.App. 279, 605 P.2d 63, 64 (1979). They focus on resolution of actions on their merits in a reasonable, expeditious manner. 4 Sheila K. Hyatt & Stephen A. Hess, *Colorado Civil Rules Annotated*, 186 (3d ed.1998).

Did the General Assembly intend section 13–80–104(1)(b)(II) to (1) bar indemnity or contribution claims until after termination of the construction defect lawsuit, or (2) allow them to be brought in the construction defect lawsuit through an appropriate cross-claim or third-party claim and also permit them to be brought in a separate lawsuit within a brief ninety-day window following settlement of or judgment in the construction defect lawsuit?

To answer this question we look first to the statutory language.

### 1. The Two–Year and Ninety–Day Provisions

Section 13–80–104 is a statute of limitations provision applicable to suits against architects, contractors, builders or builder vendors, engineers, inspectors, and others involved in real property construction or improvements. It incorporates the two year statute of limitations contained in section 13–80–102(1).

Section 13–80–104(1)(a), C.R.S. (2004) states as follows:

Notwithstanding any statutory provision to the contrary, *all actions against any architect, contractor, builder or builder vendor, engineer, or inspector* performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property *shall be brought within the time provided in section 13–80–102 after*

---

3. C.R.C.P. 13(g) provides:

   A pleading may state as a cross claim any claim by one party against a coparty arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross claim may include a claim that the party against whom it is asserted is or may be liable to the cross claimant for

all or part of a claim asserted in the action against the cross claimant.

4. C.R.C.P. 14(a) provides in relevant part:

   At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

*the claim for relief arises, and not thereafter,* but in no case shall such an action be brought more than six years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section.

(emphasis added).

Section 13–80–102(1) states generically that the suit shall be "commenced within two years after the cause of action accrues, and not thereafter." Section 13–80–104(1)(b)(I) provides that the claim for relief based on a construction defect "arises under this section at the time the claimant or the claimant's predecessor in interest discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury."

Having provided a two-year statute of limitations applicable to bringing a construction defect lawsuit claim from the time it "arises," the statute then addresses indemnity and contribution claims that defendants in construction defect lawsuits might have against another person. Section 13–80–104(1)(b)(II) provides as follows:

> *Notwithstanding* the provisions of paragraph (a) of this subsection (1), all claims, including, but not limited to indemnity or contribution, by a *claimant* against a person who is or may be liable to the claimant for all or part of the claimant's liability to a *third person:*
>
> (A) *Arise* at the time the third person's claim against the claimant is settled or at the time final judgment is entered on the third person's claim against the claimant, whichever comes first; and
>
> (B) Shall be *brought within ninety days* after the claims arise, and *not thereafter.*

(emphasis added). If one reads the "notwithstanding," "claimant," "third person," "arise," "brought within ninety days," and "not thereafter" language in isolation from the surrounding statutory provisions, one might conclude that the General Assembly has provided a separate and extraordinarily narrow statute of limitations for bringing an indemnification or contribution claim after a construction defect lawsuit terminates. Such a reading would bar operation of C.R.C.P. 13

and 14 in construction defect lawsuits, rendering a general contractor sued by a homeowner for a construction defect unable to resolve the liability of a subcontractor who caused the defect, except by filing a separate suit and thereby prolonging litigation.

Depending on the outcome of this second litigation, a third lawsuit might be commenced by the person held responsible for the construction defect in the second lawsuit, and so on through a succession of lawsuits down the chain of architects, contractors, builders, engineers, and inspectors. If this were the General Assembly's intent, it would defy the axiom that time is money and produce an absurd result for the construction industry.

The rules of civil procedure are designed to avoid extensive seasons of fractured litigation, such as this. They promote expeditious resolution of all disputes arising out of the same transaction in a single lawsuit. To avoid multiple, expensive, time-intensive, and time-delayed suits, C.R.C.P. 13(g) provides that a cross-claim may be brought against a party who "is or may be liable to the cross claimant for all or part of a claim asserted in the action against the cross claimant." C.R.C.P. 14(a) provides that a defending party may have process served against "a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

These rules allow cross-party or third-party claims in order to avoid the necessity of separate actions. *Packaging Corp. of America v. Indus. Comm'n,* 173 Colo. 212, 477 P.2d 367, 368 (1970). They guard against circuity of action, save time and expense, and eliminate a serious handicap to the defendant consisting of the time difference between the judgment against her and a judgment in her favor against the cross-party or third-party defendant. *Pioneer Mut. Comp. Co. v. Cosby,* 125 Colo. 468, 244 P.2d 1089, 1091–92 (1952). Claims that may be pursued against a cross-party or third-party defendant are those that "would result in a judgment against a [cross-party or] third party for all or some part of the judgment entered against a defendant on a plaintiff's claim...." *Mar-*

tinez v. Denver Transformer Sales & Serv., Inc., 780 P.2d 49, 51 (Colo.App.1989).

Our statutory analysis concludes that the General Assembly did not intend to prevent the beneficial operation of C.R.C.P. 13 and 14 in construction defect litigation; accordingly, we reject the trial court's construction of section 13–80–104(1)(b)(II).

## 2. The Statute's Conflicting Language

As in other statute of limitation cases, "arise" is a word that can be clear or unclear, straightforward or ambiguous, depending on the statutory context. In *City and County of Denver v. Gonzales*, 17 P.3d 137, 140–41 (Colo.2001), for example, we considered different dictionary definitions of the words "arise" and "arising from" ("originate," "stem," "result," "grow out of," "flow from") in the course of analyzing two possibly applicable statute of limitations provisions, one a two-year period, the other a three-year period. We concluded that the legislature intended the three-year period to apply in that case. In part, we relied on the canon that statutes of limitation are in derogation of a presumptively valid claim and the longer period will be preferred because it affords a claimant additional time to prepare and bring its action. *Id.* at 140.

As in *Gonzales*, we cannot read section 13–80–104(1)(b)(II) in isolation from other provisions of the statute. As a whole, the Construction Defect Action Reform Act ("CDARA") addresses construction defect cases. Within its provisions are two sections that expressly anticipate the use of C.R.C.P. 13 and 14.

Section 13–20–802.5(1) defines the word "action" to include a cross-claim or third-party claim in a suit for construction defect damages:

> "Action" means a *civil action* or an arbitration proceeding *for damages*, indemnity, or contribution brought against a construction professional to *assert a claim, counterclaim, cross-claim, or third party claim* for damages or loss to, or the loss of use of, real or personal property or personal

injury caused by a defect in the design or construction of an improvement to real property.

§ 13–20–802.5(1), C.R.S. (2004)(emphasis added).

Moreover, a central feature of CDARA is a provision for plaintiff identification of the construction defect.

> [I]n every action brought against a construction professional, the claimant shall file with the court or arbitrator and serve on the construction professional an initial list of construction defects in accordance with this section.

§ 13–20–803(1), C.R.S. (2004) Section 13–20–803(4) is a provision that contemplates the addition of subcontractors in the construction defect lawsuit:

> If a subcontractor or supplier is added as a party to any action under this section, the claimant making the claim against such subcontractor or supplier *shall file with the court and serve on the defendant an initial list of construction defects* in accordance with this section within sixty days after service of the complaint against the subcontractor or supplier or within such longer period as the court in its discretion may allow.

§ 13–20–803(4), C.R.S. (2004)(emphasis added).[5]

Accordingly, two other provisions of CDARA expressly anticipate claims against other parties after the construction defect lawsuit commences, or the addition of third parties, in order to resolve who is responsible for the identified defect and damages due.

The trial court's construction of section 13–80–104(1)(b)(II) conflicts with section 13–20–802.5(1) and section 13–20–803(4). Of course, our duty is to resolve such a conflict by ascertaining the intent of the General Assembly. Here, the legislative history of CDARA reveals that the legislature intended section 13–80–104(1)(b)(II) to operate as a statute of limitations tolling provision, not as a ripeness requirement that would preclude carefully

---

5. Section 13–20–803 was amended, effective April 25, 2003. No changes were made to paragraph 4. Previously, the definition of the word

"action" was included in paragraph (1), but was subsequently moved to section 13–20–802.5 as quoted above.

tailored indemnity or contribution cross-claims or third-party claims.

### 3. The Legislative History

The General Assembly enacted CDARA for the purpose of streamlining construction defect litigation. It understood from testimony that the traditional reaction of a general contractor in answer to the complaint of a building owner was to cross-name or add everybody and anybody who had any part to play in the construction chain. Representative Stengel, the bill's co-sponsor, deplored such "shot gun" litigation. Transcript of Construction Defect Action Reform Act Hearings on House Bill 01–1166 Before House Business and Labor Comm., 63rd General Assembly, First Sess. (Mar. 6, 2001) at 1 (statement of Representative Stengel) (hereinafter "Transcript of House Hearings").[6] A principal purpose of the bill was to require identification of the alleged defect and pinpoint who is responsible for it. "It's going to end shot gun lawsuits" and "limit who can be involved [to] the people that are responsible for the defect" so that "[o]nly the subcontractors that are responsible for the defects will be entered into the action." *Id.* at 1.

Contrary to the trial court's conclusion, the bill intended to allow addition of third-party subcontractors alleged to be responsible for the complained—of defects.

> [It would] *allow the court's discretion that as time goes on, if the defects are warranted that other subcontractors can be allowed into the action.* And that, uh that just means that as things go on, they find more damage, or they find more defects that the [inaudible] will be allowed to be entered into the action.

*Id.* (emphasis added).

Representative Stengel called section 13–80–104(1)(b)(II) a "tolling provision." *Id.* at 3. The Senate co-sponsor agreed, referring to it as a "deferral" provision:

It has a deferral of the statute of limitations on third party claims. Now it provides that the statute of limitations as it applies to builders is not triggered as to third party claims until court judgment is entered and settlement is reached.

Transcript of Construction Defect Action Reform Act Hearings on House Bill 01–1166 Before the Senate Business Affairs and Labor Committee, 63rd General Assembly, First Sess. (March 21, 2001) at 39 (statement of Senator Fitz–Gerald).[7]

Representing Farmers Insurance, Mike Benschneider testified that this provision would provide a safety valve to avoid the prior practice of needlessly adding claims and parties to the construction defect litigation. The general contractor could either bring an appropriate cross-claim or third-party claim in the construction defect litigation, or wait to file a separate suit within the allowed brief ninety-day window following settlement or judgment.

> Basically what that means is that the general contractor will have 90 days after the settlement on the claim [inaudible] when the claim goes to trial to bring in whatever subcontractors are necessary. That is 13–80–104 on 1166. What happens now is a claim is filed, or a lawsuit is filed by the plaintiff against the general, they typically don't have, they either don't have time because we're running up against the problems with the statute, or a nonspecific allegation or pleading, uh and really the general contractor insurer has no choice but to bring in every subcontractor. . . . *What this provision, the tolling provision will allow it will allow the general contractor time to sort out who truly should be brought into the lawsuit and who can be brought out, or left out.*

Transcript of House Hearings at 13 (emphasis added).

Therefore, the General Assembly intended to (1) require construction defect plaintiffs to identify the defect, and (2) allow indemnity and contribution claims to be brought by

---

**6.** This transcript of the recorded hearings is attached to Harwell's Petition for Original Proceeding to this Court.

**7.** This transcript of the recorded hearings is attached to Harwell's Petition for Original Proceeding to this Court.

defendants against other parties responsible for the defect, either in the construction defect litigation or a separate lawsuit. If a separate lawsuit is brought, it must be commenced within a narrow ninety-day period after settlement or judgment in the construction defect lawsuit.

We conclude that section 13–80–104(1)(b)(II) is a statute of limitation tolling provision, not a ripeness provision. The legislature intended to alleviate the practice of general contractors adding a multitude of potentially responsible parties to protect themselves from an expiring statute of limitations; accordingly, it tolled the otherwise applicable statute of limitations in order to allow indemnity or contribution claims to be brought in a separate lawsuit, but within ninety days after settlement of or judgment in the construction defect lawsuit. This would allow, but not require, a separate proceeding to follow on the heels of the settlement or judgment in the construction defect litigation.

We conclude that the trial court based its order dismissing Harwell's cross-claim on an erroneous interpretation of the statute. The trial court should have denied FDG's Motion for Judgment on the Pleadings.

## III.

Accordingly, we make this rule absolute and remand this case to the trial court with instructions to vacate its order and reinstate Harwell's stricken claim against FDG.