Codiejo APODACA, n/k/a Codiejo Martinez, and Michelle I. Carlton, Plaintiffs–Appellants,

v.

ALLSTATE INSURANCE COMPANY, an Illinois Insurance Corporation, and Sandra H. Perkins, Defendants–Appellees.

No. 08CA2231.

Colorado Court of Appeals, Div. III.

Nov. 25, 2009.

The Carey Law Firm, Robert B. Carey, Megan E. Maples, Colorado Springs, Colorado; The Gold Law Firm, L.L.C., Gregory A. Gold, Collene Parsley, Greenwood Village, Colorado, for Plaintiffs–Appellants.

Wheeler Trigg O'Donnell LLP, John M. Vaught, Terence M. Ridley, Denver, Colorado; Meckler, Bulger & Tilson LLP, Peter J. Valeta, Chicago, Illinois, for Defendants–Appellees.

Opinion by Judge ROY.

Plaintiffs, Codiejo Apodaca, now known as Codiejo Martinez, and Michelle I. Carlton (the insureds), appeal the judgment dismissing their declaratory action against defendants, Allstate Insurance Company (the insurer) and Sandra H. Perkins (the agent). We affirm.

## I. Background

The insureds were involved in an automobile accident in June 2002. At the time of the accident, the insureds were covered as resident relatives under two insurance policies issued by the insurer to Steven Carlton (the policyholder), who is Carlton's father and Martinez's stepfather. The first policy insured the motor vehicles and the second was an umbrella policy, which provided $1 million in excess liability coverage, including, among other things, automobile coverage.

The insureds brought this action seeking a judicial declaration that, since the insurer failed to provide or offer uninsured/underinsured motorist (UM/UIM) coverages under the umbrella policy as, in their view, required by section 10–4–609(1), C.R.S.2009, the maximum amount of additional UM/UIM coverage available under the insurer's rating plan should be deemed incorporated into the umbrella policy as a matter of law. The insureds also brought suit against the insurance agent who sold the umbrella policy, arguing that she had breached her duty of care by failing to inform the policyholder that the umbrella policy did not contain UM/UIM coverages.

The insurer moved to dismiss several claims, arguing, as to the umbrella policy, that section 10–4–609(1) did not require that it provide or offer UM/UIM coverages in the umbrella policy; thus, the insureds failed to state a claim for which relief could be granted. The agent also argued that she owed no duty to the policyholder to advise him that the umbrella policy did not contain UM/UIM coverages.

The trial court granted the motion as to the above mentioned claims against the insurer and the agent. After the remaining claims were voluntarily dismissed, this appeal followed.

## II. Standard of Review

The purpose of a motion to dismiss for failure to state a claim is to "test the formal sufficiency of the complaint." *Hurtado v. Brady*, 165 P.3d 871, 872 (Colo.App. 2007) (quoting *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911 (Colo.1996)). In reviewing a motion to dismiss, the court must take the allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Id.* at 872–73. Motions to dismiss for failure to state a claim under C.R.C.P. 12(b)(5) are generally viewed with disfavor and should be granted only if it can be shown "beyond doubt that the plaintiff cannot prove facts in support of the claim that would entitle the plaintiff to relief." *Id.* at 873 (quoting *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo.1999)).

We review a trial court's ruling on a motion to dismiss de novo. *Id.* (citing *Fluid*

*Tech., Inc. v. CVJ Axles, Inc.*, 964 P.2d 614, 616 (Colo.App.1998)). We apply the same standard of review to a motion to dismiss as the trial court applies. *Id.* (citing *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 123 (Colo.1992)).

### III. Umbrella Policy

The insureds first argue the trial court erred by failing to include umbrella policies within the ambit of section 10–4–609(1). We are not persuaded.

### A. The Policy

At the time of the accident, the insureds were covered by an Allstate auto policy, which insured four motor vehicles. This policy had liability and UM/UIM limits of $100,000 for each person and $300,000 for each accident. The policy was issued pursuant to, and was governed by, part 6 of article 10, title 4, of the Colorado statutes (Part 6). In 2002, an insurer was not required to provide UM/UIM coverages in excess $100,000 for each person and $300,000 for each accident, which UM/UIM limits are applicable here. *See* ch. 92, sec. 1, § 10–4–609(2), 1983 Colo. Sess. Laws 454 (now codified with amendments removing the limitation at § 10–4–609(2), C.R.S.2009). The policy provided liability coverage for the named insured and resident relatives, but provided UM/UIM coverages to the named insured, resident relatives, and "any other person while in, getting into or out of, or getting on or off an insured auto with [the insured's] permission."

The insureds were also covered by an umbrella policy issued by the insurer to the policyholder with policy liability limits of $1 million. The umbrella policy paid "when an insured becomes legally obligated to pay for personal injury or property damages caused by an occurrence." "Occurrence" was defined as "an accident or a continuous exposure to conditions." With respect to many liability risks that are commonly insured separately, including aircraft, automobile, homeowners, recreational vehicles, domestic or farm employees, and watercraft coverage, the umbrella policy required minimum liability limits on a primary, or underlying, insur-

ance policy. In the case of automobiles, the umbrella policy required that the underlying policy have liability limits of $100,000 per person and $300,000 per accident.

The umbrella policy did not require that the underlying policy provide UM/UIM coverages, much less require minimum limits for that coverage. Moreover, UM/UIM coverages do not indemnify the policyholder from liability for his or her negligent conduct; they protect the insureds under the automobile policy from damages caused by the negligence of a third-party motorist who is uninsured or underinsured.

### B. Standard of Review

Matters of statutory interpretation raise questions of law that we review de novo. *Hurtado*, 165 P.3d at 872. In reviewing a statute, it is our duty to "effectuate the intent and purpose of the General Assembly." *Id.* (quoting *CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.*, 105 P.3d 658, 660 (Colo. 2005)).

If, on the one hand, the statutory provisions are clear and unambiguous, we apply the plain, ordinary meaning of the statute's language and provisions. *Id.* (citing *CLPF–Parkridge*, 105 P.3d at 660). However, if, on the other hand, the statutory language is unclear or ambiguous, "we look to sources of legislative intent, including the object the legislature sought to obtain by the enactment, the circumstances under which it was adopted, and the consequences of a particular construction." *Id.* at 873–74 (quoting *CLPF–Parkridge*, 105 P.3d at 661). A statute is ambiguous if it is susceptible of more than one interpretation. *Id.* at 874 (citing *Estate of David v. Snelson*, 776 P.2d 813, 817 (Colo. 1989)).

### C. The Statute

At the outset, we have not been cited to, and our research has failed to discover, any Colorado statute or regulation governing or regulating umbrella liability insurance policies, much less expressly governing the marketing, terms, or coverages required in such policies. Further, Part 6 governs automobile

or motor vehicle liability policies, and not umbrella policies.

Section 10–4–609(1) required UM/UIM coverages in automobile policies. At the time pertinent here, it stated:

> (a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42–7–103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.
>
> (b) This subsection (1) shall not apply to motor vehicle rental agreements or motor vehicle rental companies.

Ch. 51, sec. 4, § 10–4–609(1), 1995 Colo. Sess. Laws 143 (now codified without substantive amendment as § 10–4–609(1), C.R.S.2009).

### D. Statutory Interpretation

■ The insureds contend the plain language of section 10–4–609(1) requires an offer of UM/UIM coverages in any policy providing automobile liability coverage in Colorado. They rely on the fact that section 10–4–609(1) did not exempt umbrella policies from the statute. We are not persuaded.

The language in section 10–4–609(1), with which we are immediately concerned, is:

> No *automobile liability or motor vehicle liability policy* insuring against loss resulting from liability ... arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued ... in this state with respect to any motor vehicle licensed for highway use in this state un-

less [UM/UIM] coverage is provided therein or supplemental thereto. ...

§ 10–4–609(1)(a) (emphasis added).

In essence, the insureds present a tautological argument—that is, because the umbrella policy provides motor vehicle liability coverages it is an "automobile liability or motor vehicle liability policy" within the meaning of section 10–4–609(1)(a). This argument overlooks the entirety of the statutory and regulatory scheme. Automobile or motor vehicle insurance policies are regulated by statute, §§ 10–4–601 to –643, C.R.S. 2009; required by statute, §§ 42–7–101 to –609, C.R.S.2009 (Motor Vehicle Financial Responsibility Act); and regulated by the Division of Insurance Rules 5–2–1 to –16, 3 Code Colo. Regs. 702–5 (Automobile Insurance). Automobile or motor vehicle insurance insures the owner or operator of a motor vehicle against liability arising out of the ownership and operation of designated motor vehicles.

The umbrella policy, as above described, in contrast, provides general liability coverage and requires a primary insurance policy with minimum liability limits as to those risks or activities for which specialized liability insurance is generally available and commonly purchased. In addition, umbrella policies are not required, nor are they regulated in Colorado.

The insureds cite two cases from other jurisdictions to support their proposition that umbrella policies are subject to UM/UIM statutory requirements: *Abrohams v. Atlantic Mut. Ins. Agency,* 282 Ga.App. 176, 638 S.E.2d 330, 333 (2006); *Estate of Delmue v. Allstate Ins. Co.,* 113 Nev. 414, 936 P.2d 326, 328 (1997). However, these cases are distinguishable as the motor vehicle insurance statutes at issue there are different from Colorado's statutes. In *Abrohams,* the Georgia statute defined "vehicle insurance" as insurance "against any loss, liability, or expense resulting from or incident to ownership, maintenance, or use of any such vehicle." 638 S.E.2d at 333 (quoting Ga.Code Ann. § 33–7–11(a)(1)). This definition is broader and more encompassing than Colorado's definition of a policy, § 10–4–601(10), or section 10–4–609's reference to "automo-

bile liability or motor vehicle liability policies." In *Delmue,* the court construed a statute in a statutory scheme that expressly exempted umbrella policies in other insurance contexts but did not exempt them in the motor vehicle context. 936 P.2d at 328 (considering Nev.Rev.Stat. §§ 488.055 & 687B.145(2)).

Based solely on the plain language of the statute and its context, we conclude umbrella polices are not included under section 10–4–609 and, thus, are not subject to the UM/UIM coverage requirements of that statute. However, we can also reach the same conclusion based on case law from other states with similar UM/UIM motor vehicle statutes.

With respect to motor vehicle insurance, Colorado has a minimum recovery system. This means that insurers are required to provide UM/UIM coverage at minimum levels, usually the amount required by the state's financial responsibility law, in Colorado, $25,000. In Colorado, an automobile insurer must offer UM/UIM coverages up to the liability policy limit purchased. However, the policyholder need not accept UM/UIM coverages at the minimum liability limits. § 10–4–609(1)(a).

The majority of the appellate courts that have considered the issue presented here under a minimum recovery system have concluded that umbrella policies are not subject to the motor vehicle insurance statutes. *O'Hanlon v. Hartford Accident & Indemnity Co.,* 639 F.2d 1019, 1026–27 (3d Cir.1981) (construing Delaware law); *Continental Ins. Co. v. Howe,* 488 So.2d 917, 919 (Fla.Dist.Ct. App.1986) (construing Rhode Island law); *Cincinnati Ins. Co. v. Miller,* 190 Ill.App.3d 240, 137 Ill.Dec. 755, 546 N.E.2d 700 (1989); *Hartbarger v. Country Mut. Ins. Co.,* 107 Ill.App.3d 391, 63 Ill.Dec. 42, 437 N.E.2d 691, 693–94 (1982); *Pielhau v. RLI Ins. Co.,* 144 N.M. 554, 189 P.3d 687, 691 (2008); *Pentz v. Davis,* 927 P.2d 538, 544 (Okla.1996) (citing *Moser v. Liberty Mut. Ins. Co.,* 731 P.2d 406, 407–09 (Okla.1986)); *Sidelnik v. American States Ins. Co.,* 914 S.W.2d 689 (Tex.App.

1996); *MacKenzie v. Empire Ins. Cos.,* 113 Wash.2d 754, 782 P.2d 1063 (1989); *see also* Lisa K. Gregory, Annotation, *"Excess" or "Umbrella" Insurance Policy as Providing Coverage for Accidents with Uninsured or Underinsured Motorists,* 2 A.L.R.5th 922, § 4[a] (1992). While there is no uniform rationale, one court stated that if the legislature had intended that UM/UIM coverages equal liability coverage from any source, it could so provide. *See, e.g., Rowe v. Travelers Indem. Co.,* 245 Mont. 413, 800 P.2d 157, 161 (1990).

In contrast, the majority of the appellate courts construing and applying "full recovery statutes," which require UM/UIM coverage in an amount equal to the liability limits without an election, have reached a contrary conclusion. *See United Nat'l Ins. Co. v. DePrizio,* 705 N.E.2d 455, 462 & n. 15 (Ind. 1999) (collecting cases); *Bartee v. R.T.C. Transportation, Inc.,* 245 Kan. 499, 781 P.2d 1084, 1094 (1989) (construing superseded version of Kansas statute); *Southern American Ins. Co. v. Dobson,* 441 So.2d 1185, 1190–91 (La.1983); *Isenhour v. Universal Underwriters Ins. Co.,* 341 N.C. 597, 461 S.E.2d 317, 321–22 (1995); *see also* Gregory, 2 A.L.R.5th 922, § 4[c]. Again, while there is no unanimity as to the rationale, these courts generally are of the view that when automobile policies require UM/UIM coverages equal to the liability coverages, that equality should extend to umbrella liability policies. *See, e.g., Bartee,* 781 P.2d at 1095.

We are more persuaded by the majority position in those states with statutory schemes similar to that in Colorado, that is, minimum recovery statutes.[1] Therefore, we conclude that umbrella liability insurance policies which include excess liability coverage for the ownership or operation of motor vehicles are not subject to the requirement of section 10–4–609 for UM/UIM coverages.

### E. Public Policy

The insureds also argue that in light of the legislative intent behind the UM/UIM

1. We note that *Hackett v. Allstate Insurance Co.,* No. 06–CV–00521, 2007 WL 735699, at **2–3 (D.Colo. Mar. 6, 2007) (unpublished order), agrees with our analysis. There, the court concluded that our UM/UIM statute is a minimum liability statute and is not applicable to umbrella policies providing excess motor vehicle liability coverage.

statutes, public policy requires that the UM/UIM coverages be included in umbrella policies. We are not persuaded.

■ The legislative intent in requiring UM/UIM coverages is to ensure the widespread availability of protection to persons against financial losses caused by financially irresponsible motorists. *Bernal v. Lumbermens Mut. Cas. Co.*, 97 P.3d 197, 201 (Colo. App.2003). Because we conclude that the statute which states the public policy is not applicable here, the argument fails.

## IV. Agent's Duty

The insureds argue that the trial court erred in dismissing their negligence claim against the agent because she had a duty to inform the policyholder that the umbrella policy did not include UM/UIM coverage. We are not persuaded.

■ "The general duty of the insurer's agent to the insured is to refrain from affirmative fraud, not to watch out for all rights of the insured and inform the latter of them." *Kaercher v. Sater*, 155 P.3d 437, 441 (Colo. App.2006) (quoting *Estate of Hill v. Allstate Ins. Co.*, 354 F.Supp.2d 1192, 1197 (D.Colo. 2004), and 4 *Couch on Insurance* § 55:5 (3d ed.)). Consistent with this general rule, an insurance agent or company does not have a common law duty to ensure complete protection to the policyholder or to recommend higher policy limits, but only has a duty to exercise a reasonable duty of care. *Id.* at 440–41. Even when an agent represents that he or she is knowledgeable about insurance coverages, and regularly in the course of his or her business, informs, counsels, and advises customers about their insurance needs, the agent does not incur duties beyond those of the standard policyholder-insurance agent relationship. Thus, in most circumstances, an insurance agent does not have a duty to advise of additional and available insurance coverages suitable for the customer's needs. *Id.* at 441. With regard to UM/UIM coverages, the insurance company's duty is established in section 10–4–609(1), and an insurer or agent has no additional common law duty to offer higher UM/UIM coverage. *Id.* at 440–41.

■ A negligence claim against an insurance agent may be premised on one category of conduct; specifically, when an agent promises to obtain a specific type of insurance requested by the insured, the agent assumes a duty to act reasonably to procure the requested insurance or to notify the insured of the inability or failure to do so. *Id.* at 442 (citing *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239 (Colo.1987)).

It should be noted that the insureds are not arguing that there was a special relationship between the policyholder and the agent so as to create a fiduciary or quasi-fiduciary duty. Nor are they arguing that the agent agreed to obtain excess UM/UIM coverage, or higher limits, for the policyholder and failed to exercise reasonable care in doing so.

■ Here, the policyholder requested an umbrella policy to protect himself and his family, which is what the agent provided. The insureds cite cases standing for the proposition that the general duty of care owed by every agent may give rise to an obligation to provide a more thorough explanation of the coverage available when the insured makes an ambiguous request. *Harts v. Farmers Ins. Exch.*, 461 Mich. 1, 597 N.W.2d 47, 51–52 (1999); *Poluk v. J.N. Manson Agency, Inc.*, 258 Wis.2d 725, 653 N.W.2d 905, 909–10 (2002). Unlike in those cases, here, the policyholder's request was not ambiguous: he asked for an umbrella policy.

Taking the insureds' allegations as true, we conclude that the policyholder's request did not trigger a duty on the agent to offer UM/UIM coverage beyond what was already included in the policyholder's automobile liability policy; thus, the insureds have failed to allege facts sufficient to withstand the motion to dismiss.

The judgment is affirmed.

Judge FURMAN and Judge MILLER concur.