417 F.2d 471
 H. Wayne BUTLER, d/b/a Wayne Butler Agency, Appellant.
v.
J. K. SCOTT and Lloyd Scott, d/b/a Scott Brothers Drilling
Company, Appellees, v. MARYLAND CASUALTY COMPANY,
Cross-Appellee.
 Nos. 97-68, 98-68.
 United States Court of Appeals Tenth Circuit.
 Oct. 9, 1969.
 
 William B. Keleher of Keleher & McLeod, Albuquerque, N.M., for appellant.
 Paul A. Phillips, Albuquerque, N.M., for appellees.
 James A. Ritchie, Albuquerque, N.M., (Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M., on the brief) for cross-appellee.
 Before TUTTLE, Senior Circuit Judge,* and HILL and HOLLOWAY, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 Appellees, J. K. Scott and Lloyd Scott, d/b/a Scott Brothers Drilling Company, filed suit in the District Court of Bernalillo County, New Mexico, to recover damages for a fire loss to personal property on June 3, 1963. On the basis of diversity of citizenship, appellants, Maryland Casualty Company and H. Wayne Butler, d/b/a Wayne Butler Agency, removed the case to the United States District Court for the District of New Mexico. The suit was tried without a jury and resulted in a judgment in favor of defendant Maryland Casualty Company and against H. Wayne Butler, individually, for $37,750 plus interest from September 1, 1963, sixty days from the filing of the proof of loss. Defendant Butler prosecutes this appeal, with appellees cross-claiming alternatively against Maryland Casualty Company.
 
 
 2
 This appeal tests whether Butler, as an independent insurance agent, is liable for his failure to procure insurance when requested to do so by appellees. We affirm the District Court in holding that Butler breached a duty owed to the clients of his agency, and is thereby liable in an amount as if the requested insurance had in fact been procured.
 
 
 3
 The facts as found by the trial court show that Scott Brothers were drilling contractors and that in 1954 or 1955 they began to place all their insurance with Maryland Casualty Company through their general agent Whyburn and Company, with Butler's predecessor James E. Colbert, responsible for its direct solicitation. In early 1961, Colbert, d/b/a Colbert and Company, procured for Scott Brothers a floater policy which covered the specified drilling equipment. Included in this Maryland Company policy was the following restrictive endorsement.
 
 
 4
 'In consideration of the reduced rate for this insurance, it is understood and agreed that this policy does not insure against loss or damage while the insured property is being used in any oil and gas well drilling or servicing operations.'
 
 
 5
 At the time the policy was issued Scott Brothers were apparently engaged in oil and gas drilling on a very limited basis. To cover the contingency excluded from the floater policy, i.e., equipment coverage while drilling for oil and gas, plaintiffs were to notify Colbert each time they drilled, and he would then procure the required coverage. On increasingly numerous occasions Scott Brothers notified Colbert of their intent to drill for oil and gas and Certificates of Insurance were requested to be sent to the oil companies with whom Scott Brothers had contracted. Colbert complied with such requests on every occasion, at least insofar as issuing the Certificates was concerned. Subsequent disclosures proved in fact that the requested insurance coverage was never actually procured.
 
 
 6
 In February, 1962, appellant Butler bought Colbert and Company and continued to handle the insurance business of Scott Brothers. Notwithstanding the fact that Butler knew nothing of the restrictive endorsement, as often as Scott Brothers notified him that oil and gas wells were to be commenced, he issued Certificates of Insurance to certify the existence of coverage. In this regard the trial court found that Butler assumed the obligation of servicing the appellees and that they, as his clients, relied upon Butler for their insurance advice. The court additionally found that the Certificates of Insurance which issued out of the Butler Agency led Scott Brothers to believe that the equipment was insured while used in the drilling of oil and gas wells and that appellees relied upon the representations of Butler and resultingly did not secure other insurance.
 
 
 7
 Conforming with prior custom, when Scott Brothers secured contracts to drill oil and gas wells for Murphy Corporation, notification was given to Butler of such intention and he subsequently issued a Certificate of Insurance to Murphy indicating insurance coverage on the well designated Navajo AA 1, but not as to Navajo AA 2 where the fire occurred destroying appellees' equipment. The evidence and parties conflict as to whether Butler was notified of the drilling on Navajo AA 2.
 
 
 8
 After the fire, the loss was reported to Butler who in turn reported it to the Maryland Casualty Company general agent. Thereafter, Maryland wrote to inform Scott Brothers that they disclaimed all liability under the floater policy by virtue of the restrictive endorsement.
 
 
 9
 The judgement against Butler is founded on Finding 25 of the trial court: 'Defendant Butler failed to use reasonable diligence and the skill and knowledge requisite to the calling in the handling of plaintiffs' insurance business.'
 
 
 10
 Appellant first contends that the trial court erred in extending Butler's duty beyond those policies which he undertook to issue pursuant to Scott's requests; that no duty evolved upon him regarding those policies issued prior to February, 1962. The argument ignores the fundamental principle that this case rests not upon the prior contract issued out of the Colbert Agency, rather upon the duty which springs out of the relationship between the principal and insurance agent when the latter is requested to procure insurance for the former, fails to do so and fails to inform of that failure. Fiduciary relationships are created in multifarious circumstances and 'frequently arise out of trust and confidence consensually placed in the superior knowledge, skill, or judgment of another.' Steinbrugge v. Haddock, 281 F.2d 871, 874 (10th Cir. 1960). We believe this to be a case where the trust and confidence of appellees were properly reposed in Butler, an independent insurance agent represented as possessing special skills and knowledge of the needs of the insurance client. Between the insurance client and local agent arises a duty of the highest order, inuring to the benefit of the patron. An agent employed to effect insurance must exercise the skill and diligence fairly to be expected from one in his profession. It is the independent insurance agent to whom an insured looks and relies upon to acquire the requested coverage with a reliable company who can and will properly and promptly pay claims when due. Thereafter, to assure that the client is safely insured at all times, the agent is duty bound to keep him fully informed.[1]
 
 
 11
 Appellant contends that while such a duty does exist, he is exempted in this case because he was never specifically requested to procure the insurance. The trial court found that there was sufficient request and authorization to procure the disputed coverage. Suffice it to say that this finding was made on conflicting evidence and absent 'clear error' pursuant to F.R.Civ.P. rule 52(a), 28 U.S.C.A., we will not set it aside on appeal.[2]
 
 
 12
 The first evidence supportive of the trial court's findings was a letter from Scott Brothers to Colbert, posted six weeks after Butler purchased the agency. The substance of the letter was to inform the agent that Scott Brothers was under contract to drill an oil and gas well and had rented certain machinery, the description of which was unknown but would be forwarded forthwith. The aforementioned drilling contract had been sent to Colbert's (Butler's) office and forwarded by that office to Maryland Casualty for their information and coverage.
 
 
 13
 The record is conflicting as to who actually dealt with the letter since neither Colbert nor Butler specifically recall. It is of no real consequence inasmuch as Colbert was Butler's employee at the time and notice received within his authority would bind Butler.[3] While specific language which appellant argues is necessary, is absent, the plain import was for the agent to procure the necessary insurance. It was not done.
 
 
 14
 During the last months of 1962 occurred a series of communications which dealt with a joint venture about to be undertaken by Scott Brothers to drill eight oil and gas test wells. A contract with two others provided that the Scotts would do the drilling with their equipment. The two parties were to be held harmless from all claims, including those for damage to the drilling equipment, and required the drilling equipment to be insured. This contract was sent to Butler who responded by writing a memo to Whyburn and Company requesting specific insurance coverage, with 'also S.P. Coverage' interlineated on the original draft. When examined on this interlineation Butler had difficulty explaining why he put it there and what it meant. Eventually the agent answered that he intended to request the S.P. Coverage but that it was not issued because the copy sent to Whyburn and Company failed to include 'also S.P. Coverage.' Resultingly, the equipment used in the joint venture was not covered.
 
 
 15
 Once it was plainly evident that Scott Brothers were requesting insurance coverage, Butler was required to exercise skill and diligence in procuring it.[4] This court finds it difficult to say that appellant was in any wise diligent and skillful in the handling of appellees' insurance business, particularly in light of the fact that he knew nothing of the restrictive endorsement in the 1961 S.P. policy; that he failed to procure the requested coverage; that he did not know until after the fire that Maryland Casualty did not even insure equipment engaged in such operations; and that he either failed or refused to inform Scott Brothers that the requested coverage was not in effect.[5] It is demonstrated in the record that Butler had every occasion to examine and become familiar with the Scott insurance program. Indeed, as pointed out in appellees' brief, notwithstanding the fact that this was a three year policy, actually written prior to February, 1962, at least annually the policy was reviewed for changes in the scheduled equipment. Plaintiffs' exhibit 4 contains eight endorsements signed by 'H. Wayne Butler.' If appellant had no knowledge of the restrictive endorsement and failed to procure additional coverage for that reason, his negligence in that regard is too apparent to require further discussion.
 
 
 16
 Appellant next urges that the trial court erred in failing to find appellees guilty of contributory negligence. This argument is predicated on the failure of Scott Brothers to inform Butler of the exclusionary endorsement. This defense cannot stand. The question is one of duty, with appellant relying solely on authoritative language which requires a principal to make clear his instructions to the agent.[6] Clearly this does not impose a duty on insureds to inform new agents of the contends of their policies. Our holding above settles the question here in favor of appellees.
 
 
 17
 This is a particularly novel defense in this suit since Butler was admittedly not a novice but had been connected with the insurance business for twenty years. To allow the defense as he poses it, under such circumstances would be a non sequitur.
 
 
 18
 Due to the nature of the insurance 'package' carried by Scott Brothers and its flexible quality, we cannot say that appellees were contributorily negligent in not discovering that their premiums were not increased, thus indicating no new policies.
 
 
 19
 Point three in appellant's brief urges that recovery was erroneously permitted since they allege Scott failed to give notice to Butler of the oil drilling at Navajo AA 2 where the fire occurred. Appellant argues that by Scott's own theory, they were to notify Butler at the commencement of each new well. There is a conflict of testimony here with Butler saying he was not notified and a Scott Brothers' employee saying that while he had no specific recollection it was routinely done, thus inferring that he did on this occasion. We are not in a petition to judge the demeanor of these witnesses and, finding an absence of clear error, we affirm the trial court's finding.[7]
 
 
 20
 The final argument posed by appellant asserts error by the trial court in allowing prejudgment interest. Interest was allowed from the time it would have been due had the requested policy been in effect, i.e., sixty days after proof of loss. It seems to be well settled that an insurance agent or broker who undertakes to provide insurance for another, and by his own fault or neglect fails to do so, is liable in the amount that would have been due under the policy of insurance if it had been obtained.[8] Under New Mexico law, 'the date on which the contract of insurance was breached * * * is the date when interest, as an element of damage, might be considered.' O'Meara v. Commercial Insurance Company, 71 N.M. 145, 376 P.2d 486, 490 (1962). The overwhelming consideration in allowing prejudgment interest is to insure just compensation to the injured party.[9] Just compensation in the case at bar must be measured by that which could have been recovered had the insurance company been liable on its policy. We would be hard put to permit a defendant by his own wrongdoing to better his position. We uphold the allowance of prejudgment interest.
 
 
 21
 Appellees' cross-claim against Maryland Casualty Company is to be considered only in the event the judgment against H. Wayne Butler is reversed. In light of the conclusions reached above, we need not consider the cross-appeal.
 
 
 22
 The judgment is affirmed.
 
 
 
 *
 Of the United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 Cateora v. British Atlantic Assurance, Ltd., 282 F.Supp. 167, 174 (S.D.Tex.1968), see also Jernigan v. New Amsterdam Cas. Co., 69 N.M. 336, 367 P.2d 519 (1961)
 
 
 [2]
 Club Martinique, Inc. v. United States, 409 F.2d 841 (10th Cir. 1969); Cosby v. Shackelford, 408 F.2d 1144 (10th Cir. 1969)
 
 
 [3]
 Trinity Universal Ins. Co. v. Rocky Mountain Wholesale Co., 353 F.2d 574 (10th Cir. 1966)
 
 
 [4]
 Couch on Insurance 2d 25:37
 
 
 [5]
 Annot. 29 A.L.R.2d 171 9; 44 C.J.S. Insurance 172; Couch on Insurance 2d 25:47
 
 
 [6]
 Couch on Insurance 2d 25:35
 
 
 [7]
 F.R.Civ.P. rule 52(a), 28 U.S.C.A. See cases cited note 2, supra
 
 
 [8]
 Jernigan v. New Amsterdam Cas. Co., 69 N.M. 336, 367 P.2d at 525
 
 
 [9]
 Gibbins, Inc. v. Utah Home Fire Ins. Co., 202 F.2d 469 (10th Cir. 1953)