Kelly R. KAERCHER, Plaintiff–Appellant,

v.

Brian J. SATER and National Farmers Union Property and Casualty Company, Defendants–Appellees.

No. 04CA2415.

Colorado Court of Appeals, Div. V.

June 29, 2006.

Robert F. Pribila, P.C., Robert F. Pribila, Colorado Springs, Colorado, for Plaintiff–Appellant.

Baldwin & Carpenter, P.C., Stacy A. Carpenter, Tory D. Riter, Denver, Colorado, for Defendant–Appellee Brian J. Sater.

White & Steele, P.C., Keith R. Olivera, Denver, Colorado, for Defendant–Appellee National Farmers Union Property and Casualty Company.

LOEB, J.

Plaintiff, Kelly R. Kaercher, appeals the judgment dismissing his complaint against defendants, Brian J. Sater and National Farmers Union Property and Casualty Company (Farmers), for failure to state a claim upon which relief can be granted, pursuant to C.R.C.P. 12(b)(5). He also appeals the district court's order denying his motion for amendment of judgment pursuant to C.R.C.P. 59 and his motion for amendment of pleadings pursuant to C.R.C.P. 15. We affirm.

According to the complaint, Kaercher purchased a Farmers automobile insurance policy from Sater, who was an agent of Farmers. Liability insurance coverage was for $250,000 per person and $500,000 per occurrence, while uninsured/underinsured motorist coverage (UM/UIM) was for $100,000 per person and $300,000 per occurrence.

In March 2000, Kaercher was injured in a serious automobile accident, which exhausted the at-fault driver's liability coverage of $100,000/$300,000. Kaercher then filed an underinsured motorist claim with Farmers, which Farmers denied.

In May 2004, Kaercher filed this action, asserting two claims for relief: that Sater was negligent by failing to offer UM/UIM coverage that matched Kaercher's liability coverage, and that Farmers was vicariously liable for the actions of its agent, Sater.

Defendants filed a motion to dismiss the complaint pursuant to C.R.C.P. 12(b)(5). On August 5, 2004, the district court entered an order granting defendants' motion to dismiss. On August 31, 2004, Kaercher filed a motion for reconsideration and amendment of judgment pursuant to C.R.C.P. 59 and a motion for leave to amend his complaint. The C.R.C.P. 59 motion was denied as a matter of law pursuant to C.R.C.P. 59(j) when the district court did not rule on it within sixty days. Nevertheless, on November 10, 2004, the district court entered an order denying Kaercher's C.R.C.P. 59 motion and his motion for leave to amend his complaint. This appeal followed.

We review a district court's ruling on a motion to dismiss de novo. In conducting that review, we accept as true all averments of material fact contained in the complaint and view the allegations of the complaint in the light most favorable to the claimant. *Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1129 (Colo.App. 2003).

A C.R.C.P. 12(b)(5) motion is looked upon with disfavor, and a complaint should not be dismissed unless it appears beyond a doubt that the claimant can prove no set of facts in support of his or her claim which would entitle him or her to relief. A complaint should not be dismissed for failure to state a claim so long as the claimant is entitled to some relief upon any theory of the law. *Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 385–86 (Colo.2001).

## I.

Kaercher contends that the district court erred in concluding that, because defendants complied with § 10–4–609, C.R.S. 2005, by offering and providing the maximum UM/UIM coverage required by the statute, they had no common law duty to offer higher UM/UIM coverage consistent with his liability coverage. We disagree.

Section 10–4–609(2), C.R.S., 2005 provides in pertinent part:

Prior to the time the policy is issued or renewed, the insurer shall offer the named insured the right to obtain higher limits of uninsured motorist coverage in accordance

with its rating plan and rules, but in no event shall the insurer be required to provide limits higher than the insured's bodily injury liability limits or one hundred thousand dollars per person and three hundred thousand dollars per accident, whichever is less.

The history of the codification of Colorado's uninsured motorist statutory provisions evidences "an unflagging legislative intent to assure that motorists in this state are afforded an opportunity to protect themselves from losses resulting from the negligent conduct of financially irresponsible operators of motor vehicles." *Passamano v. Travelers Indem. Co.,* 882 P.2d 1312, 1321 (Colo.1994).

The supreme court interpreted this statutory scheme, and specifically § 10-4-609(2), in *Allstate Insurance Co. v. Parfrey,* 830 P.2d 905 (Colo.1992). In *Parfrey,* the plaintiffs had purchased UM/UIM coverage at the statutory minimum of $25,000 per person and $50,000 per accident, pursuant to §§ 10-4-609(1)(a) and 42-7-103(2), C.R.S.2005. *Allstate Ins. Co. v. Parfrey, supra,* 830 P.2d at 908. The plaintiffs claimed their insurer was negligent in failing to offer them optional UM/UIM coverage at a level higher than those minimum statutory limits, in accordance with the requirements of § 10-4-609(2). The supreme court framed the threshold question before it as whether § 10-4-609(2) "furnishes an insured with a common law action in negligence against an insurer for breach of its statutory obligations." *Allstate Ins. Co. v. Parfrey, supra,* 830 P.2d at 910. The supreme court answered this question in the affirmative, concluding that the General Assembly, in enacting § 10-4-609(2), intended to create a private civil remedy to redress an insurer's breach of its statutory duty. *Allstate Ins. Co. v. Parfrey, supra,* 830 P.2d at 911.

In delineating the scope of an insurer's duty, the supreme court in *Parfrey* held that § 10-4-609(2), creates a "one-time duty upon an insurer to notify an insured of the nature and purpose of UM/UIM coverage and to offer the insured the opportunity to purchase such coverage in accordance with the insurer's rating plan and rules and in an amount equal to the insured's bodily injury liability limits but in no event in excess of $100,000 per person and $300,000 per accident, whichever is less." *Allstate Ins. Co. v. Parfrey, supra,* 830 P.2d at 912.

The supreme court further held that "an insurer's duty of notification and offer must be performed in a manner reasonably calculated to permit the potential purchaser to make an informed decision on whether to purchase UM/UIM coverage higher than the minimum statutory liability limits." *Allstate Ins. Co. v. Parfrey, supra,* 830 P.2d at 913. Finally, the supreme court stated that the insurance company in *Parfrey* would have been entitled to judgment as a matter of law if it had adequately notified the plaintiffs that they had the right to increase their UM/UIM coverage to $100,000 per person and $300,000 per accident. *Allstate Ins. Co. v. Parfrey, supra,* 830 P.2d at 914.

Here, the district court, relying on *Parfrey,* concluded that defendants' duty of care, as set forth in § 10-4-609(2), was to offer a certain amount of UM/UIM coverage in excess of the statutorily required minimum of $25,000/$50,000, and that, because Kaercher was offered and in fact purchased the maximum amount required by § 10-4-609(2), defendants' duty had been satisfied. We agree.

In our view, *Parfrey* makes clear that § 10-4-609 establishes the duty of care with respect to offering and providing UM/UIM coverage. As noted above, the supreme court has acknowledged that an insurance company would be entitled to judgment as a matter of law if it offered its insured the right to obtain UM/UIM coverage "up to $100,000 per person and $300,000 per accident." *See Allstate Ins. Co. v. Parfrey, supra,* 830 P.2d at 914; *see also Loar v. State Farm Mut. Ins. Co.,* 143 P.3d 1083 (Colo. App. 2006). Accordingly, because Kaercher was offered and purchased the maximum amount of UM/UIM insurance required by § 10-4-609(2), we conclude the district court correctly dismissed his negligence claim as a matter law.

## II.

Kaercher also contends that the district court erred in concluding that § 10-4-

609(2) defined Sater's duty of care because Colorado law recognizes a common law claim for negligence against an insurance agent for failure to advise his or her "customer of existing, available insurance necessary and suitable for [the] customer's needs." We are not persuaded.

Colorado follows the general rule that insurance agents have a duty to act with reasonable care toward their insureds, but, absent a special relationship between the insured and the insurer's agent, that agent has no affirmative duty to advise or warn his or her customer of provisions contained in an insurance policy. *See Estate of Hill v. Allstate Ins. Co.*, 354 F.Supp.2d 1192, 1197 (D.Colo.2004)(quoting 4 *Couch on Insurance* § 55:5 (3d ed.): "The general duty of the insurer's agent to the insured is to refrain from affirmative fraud, not to watch out for all rights of the insured and inform the latter of them."); *see also Jones v. Grewe*, 189 Cal.App.3d 950, 234 Cal.Rptr. 717, 721 (1987)(general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete protection, but insured has responsibility to advise agent of the insurance he or she wants, including the limits of the policy to be issued); *Sinex v. Wallis*, 611 A.2d 31 (Del.Super.Ct.1991)(an insurance agent assumes no duty to advise the insured on specific insurance matters merely because of the agency relationship); *Meyer v. Norgaard*, 160 Wis.2d 794, 467 N.W.2d 141, 142 (Ct.App.1991)(the nature of an insurance agent's duty does not impose upon the agent the affirmative obligation, absent special circumstances, to inform about or recommend policy limits higher than those selected by the insured). "[N]o duty to give advice is created simply because the insurance intermediary becomes a person's agent. This applies both to advice about what policies should be purchased as well as advice about what coverage is contained in an insured's existing policy." Robert H. Jerry, II, *Understanding Insurance Law* § 35(f)(2)(ii), at 212 (2d ed.1996). Insurance agents or brokers are not personal financial counselors and risk managers, approaching guarantor status, and it is well settled that agents have no continuing duty to advise, guide, or direct

a client to obtain additional coverage. *Murphy v. Kuhn*, 90 N.Y.2d 266, 660 N.Y.S.2d 371, 682 N.E.2d 972, 976 (1997).

These general principles also apply to UM/UIM insurance. *Critchfield v. Smith*, 151 S.W.3d 225, 231–32 (Tex.App.2004)(agent had no duty to offer UM/UIM limits equal to insured's liability coverage); *Meyer v. Norgaard, supra*, 467 N.W.2d at 143 ("agent certainly has no duty to advise an insured regarding available uninsured motorist limits higher than those selected by insured").

Whether a special relationship has been formed turns on whether there is "entrustment," that is, whether the agent or broker assumes additional responsibilities beyond those which attach to an ordinary, reasonable agent possessing normal competencies and skills. *See* Jerry, *supra*, § 35(f)(2)(ii), at 213; *see also Parker v. State Farm Mut. Auto. Ins. Co.*, 630 N.E.2d 567, 570 (Ind.Ct.App.1994).

Here, Kaercher's complaint alleges that Sater was negligent in failing to offer UM/UIM insurance equal to the bodily injury liability limits of Kaercher's policy. The district court held that Sater could not be negligent as a matter of law because he had acted in conformity with the duty of care reflected in § 10–4–609(2). We agree.

Sater had no general common law duty to ensure complete protection to Kaercher or to recommend higher policy limits, but only was required to exercise a reasonable duty of care. Because the General Assembly has determined the reasonable amount of UM/UIM coverage to be provided by an insurance company, we conclude that an agent who offers that same coverage is exercising a reasonable duty of care toward his or her clients, absent special circumstances. *See Allstate Ins. Co. v. Parfrey, supra; see also Estate of Hill v. Allstate Ins. Co., supra.* In our view, if an insurance company's reasonable standard of care is to offer coverage as required by § 10–4–609(2), it would be an absurd result if an agent, as the intermediary who makes the offer, has a duty of care to offer more than that amount, and the insur-

ance company, as the principal, could be held liable for the agent's failure to offer more than the amount of UM/UIM coverage required by § 10–4–609(2). *See E–470 Pub. Highway Auth. v. Kortum Inv. Co.,* 121 P.3d 331, 333 (Colo.App.2005).

Moreover, we perceive no allegations in the complaint that Sater had any special relationship of entrustment with Kaercher or that he held himself out as knowledgeable beyond the ordinary scope of an insurance agent—insured relationship. Kaercher points to the allegations in paragraph 21 of his complaint that Sater "holds himself to be knowledgeable about selling insurance coverages, and regularly, in the course of his business, informs, counsels and advises clients of their insurance needs." In our view, however, these general allegations, which we must accept, do not establish a duty on the part of Sater beyond the standard insured-agent relationship and do not set forth factors that would create a special relationship of entrustment with Kaercher. *See Meyer v. Norgaard, supra,* 467 N.W.2d at 144 (rejecting insureds' contention that their agent assumed the duty of advising them on their insurance needs where the agent "recommends coverage based on his individual assessment of his client's needs and periodically reviews those needs," because such facts, even if true, only reflect "a standard insurer-insured relationship, not a special relationship where the insured paid more than the premiums for special consultation and advice"); *see also Parker v. State Farm Mut. Auto. Ins. Co., supra,* 630 N.E.2d at 570 (articulating the kinds of factors required to establish a special relationship of entrustment); *Murphy v. Kuhn, supra; Tackes v. Milwaukee Carpenters Dist. Council Health Fund,* 164 Wis.2d 707, 476 N.W.2d 311 (Ct.App.1991)(rejecting insureds' contention that agent assumed a duty to advise them on the benefits of underinsured motorist coverage, where there was no long-standing relationship of entrustment and the agent did not receive any compensation for insurance consulting work other than the commissions he received from premiums). Accordingly, we conclude the district court did not err in dismissing Kaercher's claim of negligence against Sater as a matter of law.

We reject Kaercher's reliance on *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.,* 739 P.2d 239 (Colo.1987), and *Butler v. Scott,* 417 F.2d 471 (10th Cir.1969). Those cases stand for the proposition that where an insurance agent promises to obtain a specific type of insurance requested by the insured, the agent assumes a duty to act reasonably in procuring the requested insurance. In *Bayly, Martin & Fay,* the insured specifically sought liquor liability coverage for his tavern, and the agent promised that this coverage would be provided. *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.,* 739 P.2d at 241. However, the requested coverage was never provided, and when the insured was faced with a suit from a third party relating to the insured's liquor operations, the insured was forced to bear the cost of the lawsuit personally. *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc., supra.* The supreme court held that an insurance agent who agrees to obtain a particular form of coverage has a legal duty to do so or notify the insured of his or her failure or inability to do so. *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.,* 739 P.2d at 243.

Likewise, in *Butler,* the agent regularly issued certificates of insurance to vouch for coverage for equipment being used in oil and gas drilling, when the property was not in fact so insured. *Butler v. Scott, supra,* 417 F.2d at 473. The Tenth Circuit held that once it was plainly evident that the plaintiff was requesting such insurance, the agent was required to exercise skill and diligence in procuring it. *Scott, supra,* 417 F.2d at 474.

In contrast, nothing in the complaint here brings Kaercher's claim within the scope of the common law negligence as described in *Bayly, Martin & Fay* or *Butler. See Estate of Hill v. Allstate Ins. Co., supra.*

### III.

Kaercher contends that the district court erred by not granting his motion for reconsideration and amendment of judgment, pursuant to C.R.C.P. 59(a), and his motion for leave to amend his complaint, pursuant to C.R.C.P. 15. We disagree.

We review a trial court's decision to grant or deny a C.R.C.P. 59 motion for an abuse of discretion. *Buckley Powder Co. v. State,* 70 P.3d 547, 564 (Colo.App.2002).

Here, we conclude the district court did not abuse its discretion by not granting Kaercher's C.R.C.P. 59 motion. As discussed above, the district court properly granted defendants' motion to dismiss the negligence claim in the first instance, and we discern nothing in Kaercher's C.R.C.P. 59 motion that compelled the court to grant post-judgment relief under that rule.

■ A trial court does not abuse its discretion or commit reversible error when it denies a motion for leave to amend a complaint where the proposed amendment would be futile. *See Davis v. Paolino,* 21 P.3d 870, 873 (Colo.App.2001); *Conrad v. Imatani,* 724 P.2d 89, 94 (Colo.App.1986).

Here, the proposed amended complaint simply added allegations that UM/UIM coverage higher than $100,000/$300,000 was available generally in the market and specifically through Farmers at the time Kaercher purchased his policy. However, the proposed amended complaint did not address or cure the legal deficiencies that provided the basis for the dismissal of the complaint for failure to state a claim. *See Conrad v. Imatani, supra,* 724 P.2d at 94 (motion to amend complaint properly denied as futile where plaintiff "would not have been able to prove [the] claim at trial even if the amendment had been granted").

Because Kaercher's proposed amendment to his complaint would have been futile, we conclude the district court properly denied the motion for leave to amend.

The judgment and order are affirmed.

DAILEY and WEBB, JJ., concur.