**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 11, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

ASPHALT RECOVERY SPECIALISTS,
INC.; SEDER INVESTMENT LLC;
STEVEN SEDER; KAREN SEDER,

    Plaintiffs - Appellants,

v.

ARTHUR J. GALLAGHER & CO., d/b/a
Gallagher Centennial Insurance Agency,

    Defendant - Appellee.

No. 23-1131
(D.C. No. 1:22-CV-01952-PAB-MDB)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **MORITZ**, **MURPHY**, and **CARSON**, Circuit Judges.

_____

Karen and Steven Seder, Seder Investment LLC, and Asphalt Recovery

Specialists, Inc. (ARS) filed a complaint alleging that insurance broker Arthur J.

Gallagher & Co. (Gallagher) negligently procured an environmental premises

liability insurance policy for ARS. The district court dismissed the complaint, ruling

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

that the Seders and Seder Investment lacked standing and that ARS failed to state a claim.

We conclude that although ARS's constitutional standing is sufficient for jurisdictional purposes, the Seders and Seder Investment fail to state a claim because they allege no connection to the insurance policy and no facts connecting themselves to Gallagher's brokerage services. ARS, for its part, fails to plausibly assert that Gallagher owed it a duty, breached that duty, made any misstatements, or failed to disclose any information, and its claims premised on failure to advise or warn are invalid under Colorado law. We accordingly affirm but remand in part for the district court to enter the dismissal as to the Seders and Seder Investment with prejudice.

**Background**

According to the complaint, ARS is a dissolved Colorado corporation that recycled asphalt shingles at a facility located on property owned by Seder Investment. The Seders are the former owners of ARS and are the sole members of Seder Investment.

The complaint alleges that ARS "engaged [Gallagher] to procure an environmental premises liability insurance policy in order to provide coverage for the on-site cleanup of any pollution or environmental cleanup [that] may be required at the [asphalt-recycling f]acility." App. 38. Gallagher allegedly "procured a Pollution Liability Insurance Policy from Westchester Surplus Lines Insurance Company," effective for one year beginning on July 6, 2017, and renewed for a second year on July 6, 2018. *Id.* But according to the complaint, "[d]espite [ARS's] specific request

that [Gallagher] procure a policy which would provide coverage for on-site removal of pollutants, [Gallagher] failed to procure such a policy." *Id.* As a result, when "[t]he Colorado Department of Public Health and Environment required closure of the [ARS recycling f]acility due to a pollution event," plaintiffs had "to remove solid waste . . . at their own cost and expense" and "ended up having no insurance coverage." *Id.* at 38–39.

Based on these allegations, plaintiffs asserted five overlapping negligence claims against Gallagher in state court. Gallagher removed the action to federal court and moved to dismiss. The district court first concluded that the Seders and Seder Investment lacked standing to bring any claims against Gallagher. It further ruled, in relevant part, that ARS failed to state any negligence claims because Gallagher owed no duty to ARS and because Colorado law precluded any claim based on Gallagher's alleged failure to advise of risk. Given these rulings, the district court dismissed the complaint without prejudice as to the Seders and Seder Investment and with prejudice as to ARS.

Plaintiffs appeal.

**Analysis**

Plaintiffs challenge both the district court's standing ruling and its assessment that ARS failed to state claim. Both are issues that we review de novo. *See Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1159–60 (10th Cir. 2023) (standing); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir.

3

2017) (failure to state a claim). Before turning to that de novo review, we briefly set out the overarching legal framework of each issue.

Constitutional standing implicates subject-matter jurisdiction and derives from Article III of the Constitution, which permits federal courts to decide only "[c]ases" or "[c]ontroversies." U.S. Const. art. III, § 2; *see also Rio Grande*, 57 F.4th at 1159–60. "To satisfy Article III's case-or-controversy requirement, a plaintiff must demonstrate standing to sue by establishing" three things: (1) an injury that (2) can be traced to the defendant's conduct and (3) is likely to be redressed by a favorable judicial decision. *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016).

As for failure to state a claim, Federal Rule of Civil Procedure 12(b)(6) requires a plaintiff to "plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice*, 861 F.3d at 1104 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). We typically limit our review to the complaint itself, but we may also properly consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282–83 (10th Cir. 2019) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). In so doing, "we accept the well-pleaded facts alleged as

true and view them in the light most favorable to the plaintiff, but [we] need not

accept '[t]hreadbare recitals of the elements of a cause of action [that are] supported

by mere conclusory statements[]' or allegations plainly contradicted by properly

considered documents or exhibits." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th

1264, 1275 (10th Cir. 2023) (second and third alterations in original) (citations

omitted) (quoting *Iqbal*, 556 U.S. at 678). "An allegation is conclusory where it

states an inference without stating underlying facts or is devoid of any factual

enhancement." *Id.* (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281

(10th Cir. 2021)).

Following the district court's and the parties' lead, we organize our discussion

around the specific plaintiffs, beginning with the Seders and Seder Investment before

turning to ARS.

## I.    The Seders and Seder Investment

Plaintiffs argue that the district court wrongly concluded the Seders and Seder

Investment lack standing to assert negligence claims against Gallagher. At the outset,

we note that although the district court did not directly refer to principles or authority

related to constitutional standing, it dismissed the claims at issue without prejudice—

the appropriate disposition when a court lacks subject-matter jurisdiction based on

the absence of constitutional standing. *See Brereton v. Bountiful City Corp.*, 434 F.3d

1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without

prejudice because the court, having determined that it lacks jurisdiction over the

action, is incapable of reaching a disposition on the merits of the underlying

5

claims."). Nevertheless, our review of the district court's "standing" analysis reveals that it was, in fact, a merits analysis. The district court determined that the Seders and Seder Investment were neither parties to nor third-party beneficiaries of the contract and were therefore not in a position to enforce any rights or duties under the contract.[1] These are merits rulings that do not go to jurisdiction.[2] *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 n.6 (10th Cir. 2012) (explaining that "being in a position to assert or enforce legal rights or duties . . . goes to the merits of the claim and not the jurisdiction of this [c]ourt to hear it in the first instance").

That being said, we do agree with the district court's underlying assessment, albeit not its "standing" label, that the Seders could not sue because they were not insureds under the policy and that Seder Investment could not sue because it was not a third-party beneficiary of the policy.[3] First, the policy identifies only one insured:

---

[1] The district court also reasoned that the Seders could not sue as shareholders of ARS. But because the Seders do not dispute that ruling on appeal, we do not consider it here.

[2] For the sake of thoroughness, and because we have a duty to assure ourselves of our own jurisdiction, we briefly address Article III standing and easily conclude that it exists here. *See Colo. Outfitters*, 823 F.3d at 543 (noting that "a federal court can't 'assume' a plaintiff has demonstrated Article III standing in order to proceed to the merits of the underlying claim"). No one disputes here that ARS satisfies the three prongs of injury, traceability, and redressability: ARS alleges it was injured by Gallagher's negligent failure to procure the coverage it requested, and a ruling in its favor would redress that injury. *See id.* And for constitutional purposes, it suffices if one plaintiff has standing. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). So there is a live case or controversy, and subject-matter jurisdiction is not in question.

[3] *Colony Insurance* described "being in a position to assert or enforce legal rights or duties" as "statutory or contractual standing." 698 F.3d at 1228 n.6. We opt not to use such terminology in the interest of avoiding confusion between jurisdictional and merits issues. *See Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850–

ARS. And although the policy also defines "[*i*]*nsured*[*s*]" to include "any past or present director, officer, partner, employee, temporary or leased worker of the named insured while acting within the scope of his or her duties," plaintiffs do not allege that the Seders fall into any of those categories. App. 184. Plaintiffs also highlight on appeal that "[w]ith respect to a limited liability company or a trust, *insured* also means any member or trustee while acting within the scope of his or her duties as such." *Id.* But ARS is not a limited liability company, so this provision does not apply.

Second, as for Seder Investment, a party is only a third-party beneficiary of a contract if it is apparent that the contracting parties intended such a benefit. *See Jefferson Cnty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 843 (Colo. 1992). The district court pointed out that "[t]he complaint alleges no facts indicating that the agreement between ARS and Gallagher to procure an insurance policy was intended to benefit Seder Investment." App. 230. Rather than challenge this interpretation of the complaint, plaintiffs argue on appeal that Seder Investment is a third-party beneficiary because it "is the landlord and owner of the property . . . and as such has been damaged by the environmental pollution at the facility." Aplt. Br. 19. But the alleged harm to Seder Investment doesn't overcome plaintiffs' failure to plead any

---

51 (10th Cir. 2015) (rejecting "standing" characterization and instead "treat[ing] the issue of the right to contest coverage under the [p]olicy as the substantive question that it actually is").

facts showing that ARS and Gallagher intended the policy to benefit Seder Investment.

Moreover, in separately concluding that no plaintiff stated a claim, the district court noted that "the complaint alleges no facts indicating that any plaintiff other than ARS engaged Gallagher to procure the insurance policy." App. 235. Indeed, although the complaint alleges that Gallagher negligently procured an insurance policy, it includes no allegations that either the Seders or Seder Investment ever asked Gallagher to procure a policy or had any relationship with Gallagher. Thus, any duty on Gallagher's part flows only to ARS. And as the district court noted below, "[p]laintiffs have cited no authority supporting the premise that an insurance broker owes legal duties to parties who did not engage its services." *Id.*

Because the Seders are not parties to the contract, Seder Investment is not a third-party beneficiary of the contract, and neither alleges any connection to Gallagher's alleged negligence, these plaintiffs fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). But because we affirm the dismissal of these parties on the merits and not for lack of Article III standing, we remand for the district court to enter the dismissal as to these plaintiffs *with* prejudice.

## II.    ARS

Plaintiffs next argue that the district court erred in dismissing ARS's five interrelated negligence claims against Gallagher, its insurance agent. Under Colorado

8

law,[4] "insurance agents have a duty to act with reasonable care toward their insureds." *Kaercher v. Sater*, 155 P.3d 437, 441 (Colo. App. 2006). For instance, when "an insurance broker or agent . . . agrees to obtain a particular form of insurance coverage for the person seeking such insurance," the broker or agent "has a legal duty to obtain such coverage or to notify the person of his failure or inability to do so." *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 243 (Colo. 1987); *see also Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1171–72 (10th Cir. 2008) (discussing these principles of Colorado law and applying them to different claims asserted against insurance broker). On the other hand, insurance brokers or agents have "no affirmative duty to advise or warn [their] customer[s] of provisions contained in an insurance policy" unless there is "a special relationship between the insured and the insurer's agent." *Kaercher*, 155 P.3d at 441. These general principles guide our analysis of ARS's five claims, which we group into three categories and review in turn.

## A.     Negligence

ARS first asserts a generalized claim for negligence, which requires allegations that Gallagher owed a duty, breached that duty, and thus caused ARS damages. *See Westin Operator, LLC v. Groh*, 347 P.3d 606, 612 (Colo. 2015) (listing elements of negligence claim). For this claim, ARS alleges that Gallagher "owed a

---

[4] Following the parties' lead, we assume that Colorado law applies in this diversity action. *See Brokers' Choice*, 861 F.3d at 1099 ("Because this is a diversity case, we . . . apply the substantive law of the forum state, Colorado, to analyze the underlying claims.").

duty . . . to exercise the care [of] reasonably careful insurance brokers, producers, and agents." App. 41. Fleshing out this general statement, the complaint alleges that (1) ARS told Gallagher it wanted an environmental premises liability insurance policy to cover "the on-site cleanup of any pollution or environmental cleanup which may be required at the [f]acility" and (2) "[d]espite [the] specific request that [Gallagher] procure a policy which would provide coverage for on-site removal of pollutants, [Gallagher] failed to procure such a policy." *Id.* at 38.

But notably absent from the complaint, as the district court explained, is any allegation that Gallagher ever agreed to procure a policy that would comply with ARS's so-called "specific request."[5] *Id.* Such an agreement is a critical part of a negligence claim against an insurance broker: Colorado specifically imposes a legal duty on "an insurance broker or agent *who agrees* to obtain a particular form of insurance coverage for the person seeking such insurance." *Bayly*, 739 P.2d at 243 (emphasis added). For instance, *Bayly* held that "the existence of this duty" was not in dispute where the evidence showed that the plaintiff specifically sought liquor liability insurance and that the broker specifically agreed to obtain that coverage (but then failed to do so). *Id.* at 241–43. This case lacks any similar allegations. As a result, ARS fails to plausibly plead that Gallagher owed it any duty to obtain a particular type of insurance coverage and fails to state a claim for negligence. *See*

---

[5] At best, plaintiffs state that Gallagher "promised to perform or communicated an intention to perform an act knowing that undisclosed facts made their performance unlikely." App. 40. But we need not accept this conclusory assertion, which is devoid of any factual support in the complaint. *See Clinton*, 63 F.4th at 1275.

*Univ. of Denver v. Whitlock*, 744 P.2d 54, 56–57 (Colo. 1987) ("A negligence claim must fail if based on circumstances for which the law imposes no duty of care upon the defendant for the benefit of the plaintiff.").

Although ARS's failure to assert that Gallagher owed it any duty compels us to affirm dismissal of ARS's negligence claim, we note ARS also fails to plausibly allege that Gallagher breached any assumed duty by failing to procure the requested coverage. The allegation that Gallagher did not procure the coverage ARS requested merely "states an inference"—that because ARS lacked insurance coverage for a particular pollution incident, Gallagher must not have procured the coverage ARS asked for—"without stating underlying facts." *Clinton*, 63 F.4th at 1275. ARS's allegation is "devoid of any factual enhancement" about, for instance, what type of coverage it asked for, what type of coverage Gallagher agreed to procure (if any), any detail about the insurance claim ARS filed, and any detail about how or why that insurance claim was denied. *Id.* (quoting *Brooks*, 985 F.3d at 1281). Indeed, ARS does not even allege that it ever submitted an insurance claim. *See Iqbal*, 556 U.S. at 678 (explaining that pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (quoting *Twombly*, 550 U.S. at 555)). And in fact, the policy itself contradicts any inference that Gallagher failed to procure the requested coverage. *See Clinton*, 63 F.4th at 1275 (stating that court need not accept allegations that are contradicted by documents properly considered alongside complaint). The policy covers "[c]leanup costs arising out of a pollution condition," defined to

11

include "reasonable and necessary expenses incurred in the . . . removal . . . of any pollution condition." App. 180, 183. This aligns with the complaint's allegation that ARS asked Gallagher to procure "coverage for the on-site cleanup of any pollution or environmental cleanup." *Id.* at 38. The similarities between this policy language and the allegations in the complaint render even more implausible any inference that Gallagher failed to procure specifically requested coverage simply because ARS lacked coverage for a vaguely described pollution incident. Thus, even if ARS had pleaded that Gallagher owed ARS a duty, we would affirm dismissal of the negligence claim based on ARS's failure to plausibly plead that Gallagher breached that duty.

> ### B.     Negligent Failure to Advise of Risk and to Warn

ARS next asserts two related claims it characterizes as negligent failure to advise of risk and negligent failure to warn. On the former, it alleges that Gallagher "had a duty to fully, fairly, and accurately advise . . . as to the nature, type, and terms of necessary insurance required for" ARS's insurance needs. App. 41. On the latter, ARS alleges that Gallagher "had a duty to fully, fairly[,] and accurately advise . . . of the risk of the type of insurance products that [Gallagher] was placing as agent and insurance producer." *Id.*

These claims contradict Colorado law. "Insurance agents or brokers are not personal financial counselors and risk managers, approaching guarantor status, and it is well settled that agents have no continuing duty to advise, guide, or direct a client to obtain additional coverage." *Kaercher*, 155 P.3d at 441; *cf. also DC-10 Ent., LLC*

*v. Manor Ins. Agency, Inc.*, 308 P.3d 1223, 1229 n.2 (Colo. App. 2013) ("We note that the duty arising from a broker's relationship with an insured that gives rise to a negligence claim is distinct from the duty of good faith and fair dealing arising from an insured-insurer relationship."). Thus, "absent a special relationship between the insured and the insurer's agent, that agent has no affirmative duty to advise or warn his or her customer of provisions contained in an insurance policy." *Kaercher*, 155 P.3d at 441; *see also Apodaca v. Allstate Ins. Co.*, 232 P.3d 253, 259 (Colo. App. 2009) ("[A]n insurance agent or company does not have a common[-]law duty to ensure complete protection to the policyholder or to recommend higher policy limits, but only has a duty to exercise a reasonable duty of care."). And there are no facts in the complaint from which we could infer that ARS and Gallagher had a special relationship, which exists when the "broker assumes additional responsibilities beyond those which attach to an ordinary, reasonable agent possessing normal competencies and skills."[6] *Kaercher*, 155 P.3d at 441. Because Gallagher had no duty to advise or warn ARS about risks of insurance coverage, ARS fails to state a claim for negligent failure to advise of risk or negligent failure to warn. *See Whitlock*, 744 P.2d at 56–57.

---

[6] At best, the complaint baldly asserts that Gallagher "was in a fiduciary or confidential relationship with" ARS, App. 40, but this is a conclusory statement lacking supporting factual details, and we need not accept it. *See Clinton*, 63 F.4th at 1275. Nothing in the complaint indicates that Gallagher was anything more than a typical insurance broker in a typical relationship with its client, and under Colorado law, that relationship does not rise to the level of a fiduciary relationship. *Cf. DC-10*, 308 P.3d at 1229 n.2.

### C.    Negligent Misrepresentation and Concealment

ARS also asserts claims for negligent misrepresentation and negligent concealment. For negligent misrepresentation, ARS "must prove that (1) [Gallagher] supplied false information in a business transaction; (2) [Gallagher] failed to exercise reasonable care or competence in obtaining or communicating that information; and (3) [ARS] justifiably relied on the false information." *Platt v. Aspenwood Condo. Ass'n, Inc.*, 214 P.3d 1060, 1067 (Colo. App. 2009). For negligent concealment, assuming such a claim exists under Colorado law, the analysis is similar but focuses on a failure to disclose information rather than an affirmative disclosure of false information. *See Leprino Foods Co. v. DCI, Inc.*, 727 F. App'x 464, 472 & n.5 (10th Cir. 2018) (noting that "it is unclear whether a claim for negligent nondisclosure is viable at all in Colorado" and applying duty standards from Restatement (Second) of Torts § 551);[7] *Cent. Masonry Corp. v. Bechtel Nat'l, Inc.*, 857 F. Supp. 2d 1160, 1163–64 (D. Colo. 2012) (concluding that Colorado would treat negligent-concealment claim similarly to claim for negligent misrepresentation). *But see Cahey v. IBM Corp.*, No. 20-cv-00781, 2020 WL 5203787, at *8 (D. Colo. Sept. 1, 2020) (unpublished) (concluding "that the weight of intermediate Colorado court decisions decline to find a viable claim for negligent misrepresentation based on an omission").

As an initial matter, these negligence claims require the existence of a duty of reasonable care in disclosing information. *See Platt*, 214 P.3d at 1067 (noting

---

[7] We cite *Leprino* and other unpublished caselaw for persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

element of "reasonable care or competence in obtaining or communicating . . . information"); *Leprino*, 727 F. App'x at 472 (describing "five scenarios under which a party has a duty to disclose"). Thus, the district court appropriately dismissed these claims for the same reason it dismissed ARS's general negligence claim: the failure to plead plausible facts from which a duty could be inferred. Yet these claims fail for a more obvious reason—ARS fails to allege facts from which we can infer that Gallagher made any false statements or failed to disclose any information. In particular, the complaint alleges only that Gallagher (1) "made misrepresentations of material facts or supplied false information . . . in the[] purchase, ownership, and procurement of Pollution Liability Insurance" and (2) "stated some but not all material facts related to the procurement of Pollution Liability Insurance and knew, or should have known, that those facts would create a false impression in the mind of [p]laintiffs." App. 39–40. Like ARS's other allegations, these assertions are "devoid of any factual enhancement." *Clinton*, 63 F.4th at 1275 (quoting *Brooks*, 985 F.3d at 1281). They are instead "[t]hreadbare recitals of the elements of a cause of action," which "do not suffice." *Iqbal*, 556 U.S. at 678. For instance, the complaint provides no factual detail about what Gallagher said or did not say to ARS, what Gallagher knew or when, or what Gallagher concealed—indeed, the complaint does not allege that Gallagher ever said anything to ARS. Thus, ARS fails to plausibly allege that Gallagher made any misrepresentations or concealed any facts and fails to state a claim for negligent misrepresentation or concealment.

15

In sum, because ARS fails to state any claims against Gallagher, we affirm the district court's order dismissing such claims.[8]

**Conclusion**

The Seders and Seder Investment fail to state a claim against Gallagher because they allege no facts connecting themselves to the insurance policy or to Gallagher's brokerage services. As for ARS, it does not allege that Gallagher ever agreed to procure the requested coverage, so it cannot plausibly assert that Gallagher owed it any duty. It additionally fails to plausibly plead that Gallagher breached any duty to procure specific coverage. For these reasons, ARS fails to state a claim for negligence. Further, ARS's claims premised on failure to advise or warn are invalid under Colorado law. Finally, ARS fails to state any claims for misrepresentation or concealment both because of the absence of any duty and because ARS does not plausibly allege that Gallagher made any false statements or failed to disclose any information. We therefore affirm the district court's dismissal of the complaint, but

---

[8] Plaintiffs' reply brief asks, in a conclusory fashion and for the first time, that they be allowed to amend their complaint. We need not consider this belated argument, which was raised neither below nor in plaintiffs' opening brief. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (following usual rule "that a party waives issues and arguments raised for the first time in a reply brief" (quoting *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009))). We additionally need not reach Gallagher's alternative arguments about the statute of limitations or the heightened pleading standards of Federal Rule of Civil Procedure 9(b).

we remand in limited part for the district court to enter the dismissal as to the Seders

and Seder Investment with prejudice.

Entered for the Court


Nancy L. Moritz
Circuit Judge
